### HART v. YELLOWLEY et al.

(Circuit Court of Appeals, Second Circuit.   May 1, 1922.) .

No. 295.

1. **Injunction** ⊕⇒147—**When no answer filed or affidavits made by defendants, affidavit of attorney cannot take place thereof.**

Where, on motion for a mandatory injunction, defendants interposed no answer, and no affidavit made by them were submitted, showing the grounds of their action in detaining plaintiff's liquor, an affidavit of their attorney, stating that they would interpose an answer denying all the material allegations in the complaint, could not take the place of a peading or affidavit by one or more of the parties.     '

2. **Injunction** ⊕⇒147—**What affiant was told by others held hearsay, and of no value in affidavit in opposition to motion.**

On motion for a mandatory injunction to restrain defendants from detaining and interfering with plaintiff's removal of whisky purchased

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under a basic permit issued to him as a wholesale druggist, what one making an affidavit in opposition to the motion was told by others about plaintiff having been engaged in the saloon or café business, or about the amount of space rented by him for his business, was hearsay, and of no more value than in an affidavit than on a trial.

3. **Injunction** ⚌147—**Statement in application for permit as wholesale druggist as to previous employment held not shown to be false.**

On a motion for a mandatory injunction restraining defendants' interference with plaintiff's removal of liquor, a statement by plaintiff, in an application for a basic permit as wholesale druggist, that his previous employment was that of commission drug broker, was not shown to be false by a personnel sheet, filed at the time plaintiff was sworn in as prohibition agent, and in which he did not mention such previous employment, where it appeared therefrom that he only referred to his principal employments or businesses.

4. **Injunction** ⚌147—**Statement in application for permit as to adequacy of equipment held a matter of opinion, and not proved false by opposing opinion.**

A statement, in plaintiff's application for a basic permit to handle liquor as a wholesale druggist, that his equipment for manufacturing and preparing the commodities stated in his application was adequate, was a matter of opinion, and could not be proved false by the opposing opinion of another, particularly when it largely involved a conclusion.

5. **Injunction** ⚌147—**Affidavits in opposition to motion for injunction held insufficient to show any ground for revoking or disregarding permits.**

On motion for mandatory injunction to restrain interference with plaintiff's removal of whisky purchased under a basic permit issued to him as wholesale druggist, and other permits authorizing him to purchase whisky, opposing affidavits *held* insufficient to show any ground for revoking or disregarding the permits, even if that could be done in the injunction suit.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Edward J. Hart against Edward C. Yellowley and others. From an order granting a motion for a mandatory injunction, defendants appeal. Affirmed.

Appeal from an order granting a motion for a mandatory injunction restraining appellants from detaining and interfering with plaintiff in the removal of 996 cases of whisky which, on October 24, 1921, had been seized by defendants. The four defendants are alleged to be officials as follows: Yellowey, "acting prohibition director of the state of New York"; Kissick, "acting supervisor prohibition agent" in charge of the borough of Brooklyn; and Oakwood and Spahr, so-called "federal prohibition agents."

The order below was granted upon consideration of the following papers: (1) Plaintiff's complaint, verified October 26, 1921; (2) affidavits in opposition of Kopff, verified November 10, 1921, of Gordon, verified November 7, 1921, and of Daub, verified November 7, 1921; and (3) affidavit of plaintiff in support of his motion, verified November 15, 1921.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Henry J. Walsh, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellants.

Morris Kamber, of New York City (Charles R. O'Connor and George L. Donnellan, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] No reason is apparent why the defendants did not interpose an answer, or,

in any event, submit affidavits showing the grounds for their action in causing the liquor to be detained and kept from the possession of plaintiff, Kopff, an Assistant United States Attorney, submitted an affidavit in which he stated that the "defendants will interpose an answer denying all the material allegations in the complaint"; but such a promise or statement cannot, of course, take the place of a pleading, or of an affidavit by one or more parties to the suit. The result is that the allegations of the bill of complaint have not been denied by answer, and, as will appear infra, the grounds upon which plaintiff's motion was opposed were based, in many respects, upon hearsay. The complaint, which was verified by plaintiff himself, alleged that on or about July 26, 1921, there had been duly issued to plaintiff what is known as a basic permit for a wholesale druggist, and that plaintiff upon the issuance of the permit engaged in the business for a wholesale druggist at 2316 Eighty-Sixth street, in the borough of Brooklyn, in the Eastern district of New York, and invested large sums of money in the business; that on August 19, 1921, four permits were duly issued to plaintiff, which authorized him to purchase 1,000 cases of whisky and in the ordinary course of business, and acting in accordance with the rules and regulations made under the National Prohibition Law, he did purchase 496 cases from Rugby Distilling Company of Louisville, Ky., and 500 cases from Murphy, Barber & Co. of Clermont, Ky., and that these concerns duly shipped these cases to plaintiff, and the cases arrived at Wallabout Terminal in the borough of Brooklyn. Thereupon the defendants, claiming to act on behalf of the United States and without warrant of law caused these cases of whisky to be detained and kept from possession of plaintiff. It was further alleged that plaintiff's property was exposed to loss by theft or fire, was subject to numerous charges, including demurrage, that its value was depreciating, and that plaintiff was threatened with a loss of legitimate trade, and that defendants were financially irresponsible.

[2] The affidavit of Kopff showed that he had no personal knowledge whatever of the subject-matter, and that such information as he may have gathered was entirely hearsay. He made as part of his affidavit the affidavits of Gordon and Daub, referred to supra. Gordon swore that he was a "federal prohibition agent," and that the "following is a true report of my investigation of Mr. E. J. Hart's application for a permit, premises, supporting affidavit, and business history." So far as we can ascertain, such an affidavit—i. e., a "supporting affidavit"—is not required by statute, and, although the record does not enlighten us, we shall assume, for the purposes of this appeal, that it may be an affidavit required pursuant to some regulation. In this supporting affidavit of Hart, according to Gordon, Hart stated that he had never been in the hotel, restaurant, or liquor business. It is sought to show that this answer was false, because a real estate broker named Perfect told Gordon that Hart was "in the saloon business," occupying premises at "Eighty-Sixth street and Eighteenth avenue, Brooklyn." This was plainly hearsay. On a trial, Gordon's hearsay testimony would not have been received, and it is of no more value in an affidavit than it would be on a trial.

Similarly, Gordon interviewed a Mr. Collins, of the Mechanics' Bank, who told him that one Edward Hart had opened an account at the bank on December 16, 1907, and stated that he was in the café business at 8440 Eighteenth avenue, Brooklyn, and on May 13, 1921, Hart discontinued the account "Edward Hart, Café Owner," and opened an account, "Edward J. Hart, Wholesale Druggist." This is also hearsay, and invites no further comment.

Similarly, Gordon stated that he had interviewed one Grubstein, owner of the premises occupied by Hart, and that Grubstein had stated that the space rented by Hart for his business was 720 square feet; whereas, Hart had set forth in his so-called supporting affidavit that the space was 1,000 square feet. This part of the affidavit is obviously hearsay.

[3] In answer to question 13 of the so-called supporting affidavit, which read, "What was your previous business and how long engaged?" Hart had stated, "Commission drug broker, 12 years." We are not informed as to what a commission drug broker is, but we assume from the title that it means a man who sells drugs on commission and does not necessarily have a stock of drugs, and we suppose, also, that a man may readily be engaged in some other occupation, and at the same time sell drugs in large or small quantities on commission. It was sought by Gordon to show that Hart was never a commission drug broker, and to that end he examined the so-called personnel sheet filed with the prohibition director on February 20, 1920, on which date it seems that Hart had been sworn in as a so-called prohibition agent, an employment which he evidently gave up at a later date. While it is true that in this so-called personnel sheet Hart did not mention that he had previously been a commission drug broker, yet the failure so to do does not, in any manner, show that he was not a commission drug broker, because in the various occupations set forth by him from 1893 to 1920, it is plain that he referred only to his principal employments or businesses, and this indirect method of attempting to show that Hart made a false statement in this regard wholly fails upon the papers in this record.

[4] Gordon in his affidavit also set forth that in answer to question 14 of Hart's "supporting affidavit," "Is your equipment adequate for the manufacturing and preparation for the market of the commodities stated in your application?" Hart answered, "Yes," and that he (Gordon) had inspected the premises of Hart, and "saw no equipment that would lead me [Gordon] to believe that a manufacturing business was to be carried on." Obviously, the question of whether Hart's equipment was adequate was a matter of opinion, and it is rather a novel method of proving that a statement is false to oppose one opinion by another, particularly when the latter opinion largely involves a conclusion.

Finally, Gordon called attention to the definition of "wholesale druggist," as promulgated by the "department at Washington." There is nothing before us which indicates how this definition was promulgated, in what circumstances or under what authority; but for the purposes of this opinion we shall assume that the definition so called is valid. Gordon then proceeded in his affidavit argumentatively to assert that,

from his personal investigation, he found certain drugs on the shelves of Hart's store, which in his (Gordon's) opinion failed to constitute Hart a wholesale druggist, according to the foregoing definition. It will be remembered that Gordon made his affidavit on November 7th, and that Hart's whisky had been seized on October 24th. The affidavit of Gordon does not state when he made this so-called inspection, and, so far as the record discloses, it may very well be that subsequent to October 24th Hart reduced his stock. In brief, Gordon's affidavit may be summarized as containing statements either based on hearsay or in the nature of argument.

Daub's affidavit was to the effect that he was a manufacturing chemist, and that, in January and May of 1921, Hart asked his advice in reference to the reputation of certain drug concerns of which he contemplated making purchases, and also asked his advice as to the "ready sellers" and what manufactured articles to handle. This affidavit is seriously put forward as tending to prove that, when the basic permit was issued to Hart on July 26, 1921, it must follow that Hart, in an affidavit dated May 13, 1921, swore falsely when he stated that he came within the definition of wholesale druggist.

Upon these three opposing affiavits, no answering affidavit by Hart was necessary; but Hart did file an affidavit, dated November 15, 1921, in which it was set forth that prior to the granting of the permits—i. e., the basic permit and the permits for the cases of whisky in question— due investigation was made by the appropriate officials of the so-called prohibition department, and that before the Kentucky distilleries honored Hart's orders they communicated in writing with the office of the so-called federal prohibition director of the state of New York, and obtained from said office a confirmation and verification of the permits to purchase. In brief, Hart's affidavit sets forth the regularity of the various proceedings precedent to the issuance of the various permits. The affidavit also called attention to the fact that under date of October 20, 1921 (i. e., before the seizure), Hart was served with a so-called order to show cause to appear before a so-called prohibition agent on November 25, 1921, and show cause why the permit issued to him should not be revoked, "upon the grounds that you do not keep your records available for inspection during the regular business hours of the day, and thereby acting in bad faith within the intent and meaning of the National Prohibition Act." In other words, at the time this departmental so-called order to show cause was issued, no mention whatever was made of any of the grounds upon which it is now sought to justify the acts of detention performed by defendants. The permit was never revoked.

By agreement of counsel we have before us the so-called form 1404, which is an application for the basic permit under the National Prohibition Act (41 Stat. 305). This application provides, among other things, as follows:

"It is hereby certified that the undersigned has not within one year prior to the date hereof violated the terms of any permit issued under the National Prohibition Act, or any law of the United States or of any state regulating traffic in liquor and will observe the terms of any permit issued pursuant to this application and the provisions of all laws and regulations relative to the acts for which permit is issued."

Nowhere in the papers before us is it set forth that Hart violated this provision.

[5] From the foregoing outline of the facts, it will be seen, so far as this record discloses, that there had been duly and lawfully issued to Hart a basic permit and the four permits authorizing him to purchase whisky from the Kentucky distilleries, and that there is nothing in the way of legal evidence interposed against the validity of these permits. We do not find it necessary to pass upon the question as to whether the permits are open to collateral attack, or in that event what would constitute material false statements. We base our decision on the ground that defendants have failed to present any admissible facts upon which the permit could be revoked or disregarded, if such procedure were appropriate in this suit.

The order is affirmed and the mandate will issue forthwith.