BOWLES, Price Administrator, Office of Price Administration, v. MONTGOMERY WARD & CO., Inc.

No. 8481.

Circuit Court of Appeals, Seventh Circuit.

May 26, 1944.

Winston, Strawn & Shaw, Stuart S. Ball, and John A. Barr, all of Chicago, Ill. (Edward J. Wendrow, of Chicago, Ill., of counsel), for appellant.

David London, Chief, Appellate Branch, Thomas I. Emerson, Deputy Administrator for Enforcement, Fleming James, Jr., Director, Litigation Division, and A. M. Dreyer and Karl E. Lachmann, Attys. Office of Price Administration, all of Washington, D. C., and Alex Elson, John F. Manierre, and Harry E. Witherell, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Defendant appeals from an order granting a preliminary injunction pending the determination of the principal action. The issues are whether there is sufficient evidence upon which to base a preliminary injunction and, if the evidence establishes that defendant has violated the regulation, is the injunction broader than the violations warrant.

The application for the injunction was brought by the Price Administrator pursuant to § 205(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., to enforce compliance with § 4 of the Act. Section 4 of the Act makes it unlawful for a person to sell or deliver any commodity in violation of specified orders or regulations of the Administrator. A regulation issued under § 2 of the Act prescribed the maximum prices at which women's, girls' and children's outerwear garments might be lawfully sold. These garments were first made subject to price control by the General Maximum Price Regulation (April 28, 1942, 7 Fed. Reg. 3153). That regulation fixed the maximum price at which any seller might sell any commodity subject to its provisions during 1942. It also required every person selling a commodity subject to the regulation to preserve for examination of the Office of Price Administration all of his existing records relating to the prices which he charged during March, 1942, and to prepare on or before July 1, 1942, a statement (commonly referred to as a base period statement) showing the highest prices which he charged for such commodities during March, 1942.

It further required every person offering to sell cost-of-living commodities at retail to file with the appropriate War Price and Ration Board of the Office of Price Administration a statement (commonly referred to as the cost-of-living statement) showing his maximum prices for each such commodity. See footnotes in Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587. June 15, 1942, women's, girls', and children's outerwear garments were excepted from the operation of the General Maximum Price Regulation and made subject to Regulation 153, 7 Fed.Reg. 4381, which was on February 24, 1943, superseded by Regulation 330, 8 Fed.Reg. 2209. This regulation regulated the retail prices of women's, girls' and children's outerwear garments. It divided the garments into

size groups or categories and prohibited the sale of any garment at a higher price than the highest price at which the seller sold a garment in the same category during March, 1942.[1] The price limitation is hereinafter referred to as the highest price line limitation. It provided that for the purposes of the regulation, each separate department of a selling establishment should be considered as a separate seller, and as amended, it required each seller to prepare on or before September 1, 1943, a pricing chart giving detailed information as to the manner in which its maximum prices under the regulation were computed.[2] August 7, 1943, the regulation was amended (8 Fed.Reg. 11041) so as to prohibit the sale of any garment during the spring selling season (March 1, to July 31) for more than the highest selling price line at which the seller delivered a garment in the same category during March, 1942, or during the fall selling season for more than the highest selling price at which the seller delivered a garment in the same category either during March, 1942, or during the period from August 1 to December 31, 1941, as to certain garments, or during the period from August 1, 1942, to December 31, 1943, as to others.[3]

In his complaint, plaintiff alleged that between February 24, 1943, and the date of the filing of the complaint (September 4, 1943), defendant sold garments listed in Regulation 330, at prices in excess of the maximum prices established by the regulation. It also alleged that on December 21, 1942, defendant had been enjoined by the court in Civil Action 4809 from selling or delivering, or offering, agreeing, or attempting to sell or deliver any commodity subject to the General Maximum Price Regulation at prices in excess of the maximum prices therefor as determined under

---

[1] Sec. 1389.552 provided in part: Each kind of garment (such as dresses, coats, suits, skirts) is broken down into certain size groups. Each size group is described as a category and given a "category number." For example, all "women's" coats are placed in Category No. 1; all "misses'" and "junior misses'" coats in sizes from 9 to 20, inclusive, are in Category No. 2; all "teen age" coats in sizes from 10 to 16, inclusive, are in Category No. 3; "girls'" dresses in sizes from 7 to 14, inclusive, are in Category No. 24, etc.

[2] Sec. 1389.554 provided in part: "In order to find your ceiling price for any garment, you use that one of the five following pricing rules which is applicable. It will be helpful in using these pricing rules to prepare immediately a pricing chart to have before you when you establish your ceiling prices. This chart should contain a list of (1) the category numbers you delivered in the base period, (2) the cost price at which you purchased garments in each of these category numbers, (3) the selling price at which you delivered during the base period the largest number of garments for each cost price, (4) the percentage markup for this selling price, (5) the highest price at which you delivered a garment of each category number in March 1942 (or if you did not deliver such a category number, the highest price at which your most closely competitive seller of the same class delivered a garment of this category number during March 1942). * * * (f) (1) For the purpose of this regulation each separate department of a selling establishment shall be considered a separate seller."
As amended (8 Fed.Reg. 11042), §

1389.554 provided in part: "In order to price under this regulation it is necessary to prepare a pricing chart. On or before September 1, 1943, you must prepare a pricing chart * * *."

[3] In order that consumers may continue to buy garments at customary price levels, this regulation provides a highest price line limitation, or an over-all ceiling rule, for each category number during each selling season. The rule is that you may not under any circumstances sell any garment (a) during the Spring selling season for more than the highest selling price line at which you delivered a garment of the same category number during March 1942, or (b) during the Fall selling season for more than the highest selling price line at which you delivered a garment of the same category number either during your base period or during March 1942.

If you did not deliver any garments of the same category number during the period which determines your highest price line limitation (March 1942 for the Spring selling season; the base period or March 1942, whichever is higher, for the Fall selling season), then your highest price line limitation is the same as that of your most closely competitive seller of the same class for a garment of that category number during that selling season. Moreover, if your base period does not include the 3-month period between October 1 and December 31 (for wholesalers, the 2-month period between September 1 and October 31), then your highest price line limitation during the Fall selling season is the same as that of your most closely competitive seller of the same class for the same category number during the Fall selling season.

the provisions of the General Maximum Price Regulation as now or hereafter amended, issued under the Emergency Price Control Act of 1942, and that the injunction remains in full force and effect. Plaintiff prayed for an injunction enjoining defendant from selling, delivering, or offering for sale or delivery women's, girls', and children's outerwear garments in violation of the regulation; from doing, or omitting to do, any other act in violation of any regulation or price schedule heretofore or hereafter issued by the Office of Price Administration, and for such similar, other and further relief as may be equitable. In its answer defendant denied that it had sold, delivered, or offered for sale or delivery at retail any of the garments in violation of the regulation.

The motion for the preliminary injunction was heard upon affidavits and evidence submitted by both parties. The court sustained the motion and defendant was enjoined (1) from selling, or delivering, women's, girls', and children's outerwear garments at prices in excess of the maximum prices established by Regulation 330 as heretofore or hereafter amended; (2) from doing, or omitting to do, any act in violation of any regulation, order, or price schedule now or hereafter issued by the Office of Price Administration pursuant to the Emergency Price Control Act of 1942; and (3) from offering, soliciting, agreeing, or attempting to do any of the foregoing.

Defendant is the owner and operator of more than 640 retail stores located throughout the United States. It is not disputed that in a majority of these stores, defendant, during the period in question, sold the garments listed in the regulation.

The evidence showed that in April, 1943, the Office of Price Administration investigated 25 of these stores to determine whether defendant was complying with the highest price line requirement of the regulation. From actual examinations of defendant's records, and on information furnished by defendant's employees, qualified to give the information, the investigators ascertained each store's highest price lines in March, 1942, and the highest price lines at which these stores were selling garments between February 24 and August 13, 1943; that at 7 of the stores, women's outerwear garments delivered to the stores after February 24, 1943, had been sold in each sale at prices from $1 to $13.25 in excess of the highest prices charged by these stores during March, 1942, and that in 18 other stores, women's coats, skirts, dresses and suits had been sold in each sale at prices from $1 to $18.02 in excess of the highest prices charged at these stores during March, 1942.

It also appears that on August 3, 1943, an investigation was made of defendant's store at La Grange, Illinois; that when the investigator requested the "cost-of-living statement" and attempted to check defendant's highest price lines during March, 1942, against the "base period statement," the store's assistant manager, then in charge of the store, informed the investigator that the store had neither of such statements and that defendant's central office instructed him as to the amount to be charged for such items. From the records available, the investigator compiled a list of highest sales prices during March, 1942, and after correlating the items listed with the categories established in the regulation, he found that the highest selling price at which the store offered misses' and junior misses' suits, during March, 1942, was $16.98, and that the store was at that time offering for sale and selling the garments for $19.98.

Upon the conclusion and consideration of all the evidence, the court, after stating it was very favorably impressed by the appearance and demeanor of plaintiff's witnesses and that their training and experience was such that their testimony could be relied upon, stated: "the defendant did not deny that it had done what the plaintiff charged it had done, * * *. The attitude of the defendant has been * * * not that it did not do what it is charged to have done, but that the plaintiff has not proved * * * that it did do those things. * * * Basing the conclusions the court is about to express upon the affidavits * * *, upon the evidence produced * * *, and what has been said and done in the case, the court is satisfied that the defendant has not made any attempt to comply with Regulation 330. As a matter of fact, on the goods which came out of its various stores from New York City, the prices are apparently fixed in New York City without regard to what prices had been paid for like goods in the same category in the various stores during March, 1942."

Subsequently, the court made findings of fact to the effect that defendant, in pricing

the women's, girls', and children's outer-wear garments sold and offered for sale since February 24, 1943, did not comply nor make any effort to comply with the provisions of Maximum Price Regulation 330; that the defendant sold garments of the type covered by the regulation, during the period between February 24 and August 1, 1943, which had been received into stock subsequent to February 24, 1943, at prices higher than the highest price charged by defendant for any garment of the same category as defined in Regulation 330, delivered by the store during the month of March, 1942; and that defendant had previously been adjudged guilty of violating another regulation issued by the Office of Price Administration, and had been enjoined from violating the regulation.

The first question presented is whether there is sufficient evidence upon which to base a preliminary injunction.

■■■ While it is true that the application for a preliminary injunction cannot be based on information and belief, but must be based on facts, and that such an injunction is to be cautiously used, yet in considering whether such an injunction has been improvidently issued, we must keep in mind that the action of the court on a motion for a preliminary injunction is not predicated upon an anticipated determination of the issues of fact which may be involved in the case. The court is not required to finally determine the issues of law or the issues of fact involved in the case. There need be only evidence tending to make out a prima facie case.

[4] From our examination of this record we believe there was evidence before the court having a reasonable tendency to make out a prima facie case. Under such circumstance, the question is whether the court, having the discretion to grant or refuse the preliminary injunction, abused its discretion. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 317, 60 S.Ct. 517, 84 L.Ed. 774; and Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587. We are of the opinion that the discretion was well exercised.

We come now to consider the remaining and more serious question, whether the injunction should have been limited to a prohibition of sales of the particular commodities here involved.

Defendant contends that the injunction should not have included the provisions restraining it from violating any regulation fixing the maximum price for any item of apparel, or any other regulation issued under the Act. In support of its contention it cites, among other cases, the cases cited in the footnote.[4]

■■■ Concededly, ordinarily, courts cannot issue a general injunction against all possible breaches of the law, nor should an injunction be broader than the illegal acts or practices charged or proven. The facts here, however, do not justify the application of such a doctrine.

■■■ There was evidence tending to prove that defendant failed to treat each store as a separate seller; that its responsible managers were shown to be ignorant of the applicable regulations; and that it failed to prepare and keep its central records in accordance with the categories established by the regulation. The court found and the evidence sustained the findings that the defendant has not complied, nor has it made any effort to comply, with the provisions of the regulation, and that it has violated the ceiling prices established for various categories in the regulation.

■■■ The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility, rather than rigidity, has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustments and reconciliation between the public interest and private needs, Hecht Co. v. Bowles, supra, and as a result they may, and frequently do, go much farther to give relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. The court has broad powers to restrain acts which are of the same type or class as unlawful acts

4 Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; New York, New Haven & Hartford R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S.Ct. 272, 50 L.Ed. 515; and National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S. Ct. 693, 85 L.Ed. 930.

43

which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930; Local 167 v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804; Texas & N. O. R. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; and Standard Oil Co. v. United States, 221 U. S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A., N.S., 834, Ann.Cas.1912D, 734.

The Emergency Price Control Act is a war measure designed to prevent inflation. To that end it provides various means, which include the remedy sought in this case. Brown v. Hecht Co., App.D.C., 137 F.2d 689, 695. The success of the Act is dependent upon the patriotic co-operation of all persons to whom it is applicable. Apathy and indifference not only increase the burden of the enforcement agencies, but endanger the ultimate success of the whole program. A strict construction of any and all violative acts are essential to the achievement of its purposes, and in determining the necessity and the scope of an injunction, the court should not consider the controversy as existing merely between an agency of the Government and a defendant, Henderson v. C. Thomas Stores, D.C., 48 F.Supp. 295, 301; nor should the courts administer § 205(a) of the Act grudgingly. Hecht Co. v. Bowles, supra. Any easy attitude of the courts which even remotely suggests that the Act may be violated with impunity strikes at the entire enforcement problem, Henderson case, supra, 48 F.Supp. page 301. The Administrator does not carry the sole burden of the war against inflation. The courts also have been entrusted with a share of that responsibility, and their discretion under § 205(a) must be exercised in the light of the large objectives of the Act. For the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief. Hecht Co. v. Bowles, supra.

Applying the rules already enunciated, the question is whether the court, under the situation here appearing, abused its discretion. We see no abuse of discretion in the action of the court.

Affirmed.