**MODEL–ETTS CORP.**

v.

**MERCK & CO., Inc.**

United States District Court
S. D. New York.

Sept. 17, 1953.

Steinberg & Schwartz, New York City, for plaintiff.

Pennie, Edmonds, Morton, Barrow & Taylor, New York City, for defendant.

DIMOCK, District Judge.

Plaintiff, Model-Etts Corp., moves for a preliminary injunction in its action for trade mark infringement and unfair competition. It is the manufacturer of an appetite satient sold under the trademark Model-Etts. Plaintiff started using this trade mark for its product in July 1951. The product is in the form of a tablet which is claimed to be effective in reducing the desire for food. It is marketed in jars. Plaintiff sells its product primarily in health food stores and organizations.

Defendant, Merck & Co., Inc., manufactures a product which serves the same purpose as plaintiff's product under the trademark Melozets. It started using this trade mark in October 1952 and the complaint was filed in this case in June 1953. While defendant's product serves the same purpose, it differs from plaintiff's product in form. Model-Etts are in the form of tablets while Melozets are in the form of crackers. The places where Melozets are generaly sold also differ from the places where Model-Etts are sold for defendant's product is primarily sold in drug stores.

Plaintiff in moving for preliminary injunction is seeking a drastic remedy. The affidavit in support of its motion, however, shows little more than the similarity that exists on the face of the two trademarks and general allegations as to the extent of injury already suffered and irreparable injury anticipated. With respect to the injury already suffered, plaintiff says that its total sales in the early part of its second season for this product, the first six months of 1953, were approximately one-seventh the sales for the first six months of 1952. There is no indication, however, as to the total amount of sales during any period. Likewise with respect to advertising, it is stated, "plaintiff did extensive advertising and arranged for even more extensive advertising by its distributors." This statement is not am-

plified by specific details in the affidavit. Attached to the affidavit are photostats of two letters said to have been received by plaintiff from its distributors. These letters contain the opinions of, facts known or observed by, and information told to, the writers. In both letters the writers say that they are losing business on Model-Etts because of the similarity of their name to that of Melozets. They write of their advertising efforts on behalf of Model-Etts and the poor results produced. One letter contains information related to the writer by retailers concerning what their clerks probably have done in view of the similarity in name of these two products. In the other, there is speculation as to the confusion of customers between the two names. While communications from customers can, for some purposes, be admissible in trademark cases, e. g. to show confusion on the part of the customers who wrote them, Parfumerie Roger & Gallet v. M. C. M. Co., 2 Cir., 24 F.2d 698, I do not think that such matters as are contained in these letters, opinions and extrinsic facts, can properly be presented in unsworn documents. Even if I were to treat them as properly verified affidavits, I would not accord them great weight. It may be that on motions for a preliminary injunction such as this, where speedy disposition can be of prime importance, the strict rules of evidence should not be enforced. These letters, however, consist largely of generalities, conclusions, speculation and indefinite hearsay comment obtained from persons not specifically described and I am not disposed to give them any weight. See Hart v. Yellowley, 2 Cir., 284 F. 245, 247; Behre v. Anchor Ins. Co., 2 Cir., 297 F. 986, 990; Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42.

■■ Although plaintiff urges quite strongly upon the court the need for a preliminary injunction it has supplied no specific and detailed facts with respect to the nature and extent of the advertising of its trademark, or the consumer's familiarity with the trademark, or the extent or amount of business involved in the use of the trademark. Indeed I cannot say, on the basis of the evidence before me, that plaintiff's trademark had earned any good will that should be protected. It is true that plaintiff shows that it has suffered a serious loss of business percentagewise but neither the cause nor amount has been shown. Defendant contends that increasing competition from other products, inefficacy of plaintiff's product and the superior consumer acceptance of defendant's product may have resulted in plaintiff's loss of business. It points out that the active ingredient of its product is methylcellulose which has the property of swelling when wet so that, when taken before meals and followed by a glass of water, it contributes to a sense of satiety and consequently less food is eaten. It then goes on to state on the basis of the stated ingredients of Model-Etts, and without contradiction, that each Melozets cracker contains 38 times as much methylcellulose as each tablet of Model-Etts contains carboxymethylcellulose. It then contends that since the dosage is the same there may not be enough methylcellulose in a Model-Etts tablet to have any effect whatsoever and that therefore they could not attract any repeat customers. On the evidence before me, I would have to speculate as to the cause of such a fall of business in plaintiff's second season of selling this product. For aught that appears some other reason accounted for the loss. What I must conclude, however, is that plaintiff has not supplied evidence of danger of irreparable injury to plaintiff or shown facts from which that result can be inferred. In the absence of such evidence and such a showing the issuance of a temporary injunction cannot be justified. Lawrence v. St. Louis-San Francisco Ry. Co., 274 U.S. 588, 47 S.Ct. 720, 71 L.Ed 1219; Behre v. Anchor Ins. Co., 2 Cir., 297 F. 986, 990, supra.

■■ As I have explained, it is difficult for me to appraise the nature and extent of the injury plaintiff is likely to

suffer. On the other hand, defendant has gone at least so far as to show that over 500 salesmen have sold Melozets to over 40,000 drug stores and have endeavored to promote its product by contact with physicians. In addition, it has distributed free samples to thousands of physicians. Thus, should I endeavor to weigh the balance of convenience, see Hamilton Watch Co. v. Benrus Watch Co., Inc., 2 Cir., 206 F.2d 738, in deciding whether or not to grant a preliminary injunction, the balance would preponderate in defendant's favor. In effect, what plaintiff seeks is that I reverse the positions occupied by the parties at the time this suit began and shift the loss from plaintiff to defendant. An injunction would free plaintiff of substantial competition which it thinks is causing its loss but it would also stop defendant in its tracks in attempting to exploit what it regards as a brand new product that will win greater consumer acceptance than other products serving the same purpose because its form is so closely identified with a generally known food product. Defendant would be put to the choice, with which perhaps plaintiff is being faced, of changing trademarks or withdrawing from the market in the face of growing competition and awaiting the final outcome of this case. Generally the object of a preliminary injunction is to preserve the status quo at the time suit is brought and not to give in effect the final relief sought. In addition, according to the facts before me, defendant's stake in its trademark is somewhat greater than plaintiff's in its trademark. Even if the injunction were granted I do not think it has been demonstrated that it would eliminate the cause of plaintiff's loss. There are no special circumstances warranting the relief sought. Indeed, I find some comfort in the fact that defendant's financial standing is such that plaintiff is assured that defendant can respond in damages, if plaintiff succeeds.

Aside from the balance of convenience I entertain serious doubt on the merits of plaintiff's claim. It must be conceded that there is some degree of similarity both in the sound and the appearance of these two trademarks: Model-Etts and Melozets. Although I do not regard either as being very strong, the similarity in appearance, I think is somewhat less than that in sound. By mere comparison of the two trademarks, I am not prepared to say that confusion on the part of the consumer must be expected or is very likely, see Pro-Phy-Lac-Tic Brush Co. v. Hudson Products, D.C. D.N.J., 86 F.Supp. 859, and there is no evidence that plaintiff's advertising has been on radio or television so that more confusion is to be feared in the area of sound where the similarity is strongest. That, however, is not the only factor to be weighed. In considering whether a trademark is so similar that it infringes another trademark, the similarity of the products upon which the trademarks are used should be taken into account. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618. It is true that these two products serve the same purpose and employ the same principle, but they are sold in different forms. The difference between a cracker and a tablet to a woman who is anxious to relieve her desire for food so that she can reduce her weight, one might fairly conclude, is substantial. It would be reasonable to expect that the attractiveness to and popularity with individual consumers of such products would be significantly different as between the products. Even if I were to regard the similarity of trademarks as so strong that the use of defendant's trade mark ought not to be permitted on a product identical with plaintiff's, I am not compelled to come to the same conclusion here where this difference between the two products exists. See Standard Brands v. Eastern Shore Canning Co., 4 Cir., 172 F.2d 144, certiorari denied 337 U.S. 925, 69 S.Ct. 1171, 93 L.Ed. 1733. Considering these two factors, I am not persuaded that the likelihood of confusion is very great.

In addition, I want to comment in passing upon the nature of the

similarity between the two trademarks. The major element of similarity is the suffix, etts. This suffix is a very common one and has been very frequently used in drug and drug-type products, indeed by this very defendant. The fact that similar trademarks were in use before plaintiff chose this one may reduce the degree of protection for his mark that he can expect. See Prichard & Constance v. Aime Co., D.C.E.D.N.Y., 5 F.Supp. 282. Also, the suffix gives a diminutive suggestion which is to some extent descriptive and it is one that it could be anticipated would be popular in trademarks for products used as aids in reducing weight. Plaintiff does not contend that it obtained any exclusive rights to that suffix and similarities to that extent perhaps should not be given much weight. See Pro-Phy-Lac-Tic Brush Co. v. Hudson Products, D.C.D.N.J., 86 F.Supp. 859, supra; compare, on the other hand the facts in Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205.

Be that as it may, this is a motion for a preliminary injunction and different considerations apply. As Judge Learned Hand put it and as I find in this case, "there is no proof, such as a preliminary injunction demands, that any confusion has so far occurred." Federal Telephone & Radio Corp v. Federal Television Corp., 2 Cir., 180 F.2d 250, 251. Plaintiff relies for evidence of actual confusion on the two letters attached to the affidavit and, as I have explained above, I do not think that such evidence can be properly presented in that form, nor do I think they should be given any weight. Nevertheless, their contents on the question of actual confusion merit a few words at this point. Treating them as properly sworn affidavits, they are evidence of no more than the fact that the sale of Model-Etts has fallen, that the effectiveness of its advertising has drastically diminished and that in the opinion of writers the loss of business is due to the similarity in name between these two products. The remainder of the contents of the two letters on the present point consists either of indefinite and insufficiently identified hearsay or speculation. See Hart v. Yellowley, 2 Cir., 284 F. 245, 247, supra; Behre v. Anchor Ins. Co., 2 Cir., 297 F. 986, 990, supra; Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 42, supra. I do not regard the opinions of two of plaintiff's distributors as sufficient evidence that actual confusion has occurred, particularly in the absence of corroborating evidence going beyond that discussed earlier. This is another reason for denying the motion. What I have said applies only to motions for preliminary injunctions. I put aside the question whether or not plaintiff must prove actual confusion in order ultimately to succeed.

Another factor which influences me in denying this motion is the difference in the packaging of the two products and the absence of any indication of an intent to appropriate plaintiff's trademark. The likelihood of injury resulting from defendant's use of its trademark is to some extent reduced by the fact that its product is sold in jars while defendant's product is sold in cardboard boxes. As a general proposition, where the infringement charged is in the use of the trademark, the dress of the packages is not considered significant. N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 9 Cir., 102 F. 327, 331. Nevertheless, I think that it is a factor that I may consider in exercising my discretion in a motion for a preliminary injunction. The same thing is to some extent true with respect to my considering what appears from the papers submitted to me to be a showing of defendant's good faith and absence of any evidence showing an intent on defendant's part to appropriate plaintiff's trademark or to take any undue advantage of plaintiff.

In view of all these circumstances, therefore, the motion for preliminary injunction is denied. The season for the sale of plaintiff's product is very nearly

over now. Moreover the serious questions involved in this case, its importance to the parties, and the possibility that they may be resolved before any further substantial injury occurs in the next season might well appeal to the calendar judge as ground for granting a preference.