The **PURITAN SPORTSWEAR CORPO-RATION, Plaintiff,**

v.

**PURITAN FASHIONS CORPORATION and Reliance Manufacturing Co., Defendants.**

United States District Court
S. D. New York.
May 27, 1964.

Ostrow, Goldman, Sklaire & Sacks, New York City, for plaintiff, George T. Mobille, James L. Dooley, Cushman, Darby & Cushman, Washington, D. C., of counsel.

Von Maltitz, Derenberg, Kunin & Janssen, New York City, for defendants, Louis Kunin, V. T. Giordano, Peter Clapman, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action for alleged infringement of registered trademark rights and unfair competition brought under the Lanham Act, 15 U.S.C. § 1051 et seq. with pendant common law claims.

Plaintiff Puritan Sportswear (Sportswear) moves for a preliminary injunction against the use by defendant Puritan Fashions (Fashions) and defendant Reliance Manufacturing, with which Fashions is affiliated, of the trademark and tradename "Puritan" in relation to boys' and men's apparel. In essence the relief which Sportswear seeks is to prevent Fashions from using any name containing the word "Puritan" in connection with the sale and distribution of T-shirts and sweatshirts and similar items featuring the "Beatles." The Beatles are the shaggy-headed English quartet which has created such a furor among the American teenage population. The T-shirts, sweatshirts and similar merchandise with which this motion is concerned have prominently imprinted across the front the name "The Beatles" in large letters and an autographed group likeness of the four Beatles themselves. Fashions is the sole American licensor of the "Beatles" for such merchandise. Sportswear does not manufacture or sell Beatle goods, has no right to do so and, indeed, strenuously disclaims any connection therewith.

Both Sportswear and Fashions are and have been for many years large manufacturers of clothing. Puritan Sportswear has been doing business under its present and predecessor corporate names, which include the word "Puritan", since 1909 and has done a gross business under

its present name since 1956 of some $114,000,000, with sales in 1963 here and abroad of over $23,000,000.

Fashions has been doing business under names including the word "Puritan" since 1914, and between 1953 and 1963 had sales of some $167,000,000. During the fiscal year 1962–63 its gross sales under labels which included the name "Puritan" amounted to almost $20,000,000. Both Sportswear and Fashions have large advertising budgets, are well recognized as leading manufacturers in the trade and deal largely with department stores and other leading retailers.

Sportswear in the main has been in the men's and boys' apparel field, specializing in such items as bathing suits, trunks, sweatshirts, etc., though it is claimed by Fashions that Sportswear has recently begun selling women's and girls' apparel. Fashions has been in the women's and girls' apparel field, principally in so-called budget dresses. Both companies have been doing business along parallel lines for many years, each using the name "Puritan" without any substantial difficulties between them.

Sportswear had been the proprietor of four expired registered trademarks featuring the word "Puritan" in distinctive script. Three of these used that word in conjunction with small figures in Puritan costume. The fourth used the word in distinctive script alone. Sportswear is also the proprietor of subsisting registered trademarks of the names "Puritan Knitting Mills Co.," "Puritan Sportswear," "Viva Freddie! Bravo Puritan!," "Puritan Mates," "Princess Puritan," and "Lady Puritan," all in various distinctive scripts and some in conjunction with small distinctive devices or pictures Sportswear also has an application pending for the mark "Puritan" as applied to men's and boys' apparel, and that application was passed to publication on February 10, 1964.

Fashions has no registered trademarks but claims a common law trademark in "Puritan Fashions" and various other combinations using the word "Puritan" as applied to women's and girls' apparel. Its application to register the mark "A Puritan Junior" for women's and misses' wearing apparel has been rejected by the Trademark Examiner, on the basis of two of Sportswear's registered marks, although that decision has not yet been reviewed.

The present controversy arose when Fashions obtained its license for "Beatle" merchandise and instituted a large promotional campaign to exploit the Beatle craze which has affected American teenagers after the recent appearance of the Beatles in this country. This was a Beatle promotion emphasizing the Beatles features of the merchandise. The market to which it was directed was essentially a teenage market, and while it was originally believed that the teenage girl was the prime target, it soon became apparent that the teenage boy was not immune either. The promotion appears to have been highly successful with over 2000 orders and 5000 telephone calls during a single two week period in February of this year.

The advertising and promotion is based on the Beatle features of the merchandise. It is stated, however, that the garments are produced and sold by Puritan Fashions Corporation. The name "Puritan" standing by itself and apart from the corporate title of Fashions is not used, at least to any substantial extent, nor is the name Puritan Sportswear.

The essence of Sportswear's position on this motion is that it views with strong distaste and strenuously objects to the use of the word "Puritan" in any combination in connection with the promotion and marketing of Beatle goods, at least in the field of boys' garments. It claims that the use of the name "Puritan Fashions Corporation" in this connection has created confusion in the trade and has injured its reputation as a manufacturer and seller of high quality men's and boys' sportswear. It seeks to have the

word "Puritan" disassociated entirely from the Beatle promotion.

Fashions, on the other hand, claims that its use of its corporate title containing the name "Puritan" in connection with the Beatle promotion is a legitimate statement as to the source of merchandise which is unique, that its Beatle goods are not in competition with the goods sold by Sportswear, that there is no possibility of confusion either of goods or origin and that Sportswear has shown nothing which would entitle it to a preliminary injunction. Fashions also claims that Sportswear has now entered the women's and girls' apparel field in violation of its rights and questions the right of Sportswear to use its corporate name or any of its registered marks in that field.

The facts before me do not justify the drastic remedy of a preliminary injunction for a number of reasons.

Sportswear has not established that the Beatle garments sold by Puritan Fashions are in direct competition with the garments sold by it. Nor can direct competition be fairly inferred from the record here.

Sportswear has produced no evidence competition be fairly inferred from the that it has or is likely to lose any sales as the result of the Beatle promotion or that the Beatle promotion has affected the sales of its own regular line.

The Beatle promotion is a highly specialized one. The primary sales appeal is not the garment itself but the name and the garish autographed pictures of the Beatles which are blazoned on them. The department stores and other retail outlets purchasing these goods are plainly exploiting the Beatle craze. The Market is limited to teenagers infected with the craze. No one else is likely to be interested in this merchandise. It is unlikely that those purchasing Beatle goods would consider other garments as a substitute for them or vice versa.

It does not appear that there is likelihood of confusion between the *goods* sold by Fashions and those sold by Sportswear. Such evidence as there is on the subject of confusion relates only to the possibility of confusion with respect to the *origin* of the Beatle goods, not confusion with respect to the goods themselves.

Moreover, the evidence as to confusion of origin is not impressive. The inquiries received by Sportswear with respect to Beatle goods are relatively few when compared with the more than 2000 orders and 5000 inquiries received by Fashions in a single two week period. A number of such inquiries are from firms interested in getting in on the Beatle craze in one way or another. There is some misdirected or misdelivered mail. There were some customers who seemed to be upset that Sportswear might be handling such undignified merchandise as the Beatle line but these were quickly reassured by Sportswear. Indeed, Sportswear published an advertisement disassociating itself in no uncertain terms from anything having to do with the Beatles. There is no evidence that any real injury to Sportswear has resulted from any of these incidents.

Moreover, even were there sufficient evidence to establish confusion of origin there is insufficient to establish that this was the result of a deliberate attempt by Fashions to palm off its Beatle goods as those of Sportswear or as to mislead the buying public as to their origin. There is no charge here that Fashions has used or imitated the name Puritan Sportswear or, indeed, any of Puritan Sportswear's registered trademarks. There is no mismarking or mislabeling of the Beatle goods themselves. Fashions has used the same corporate name as it has been using for years. It has merely stated the fact that Puritan Fashions Corporation produces and sells Beatle goods, something which Sportswear neither has the right nor the slightest desire to do. The facts presented here do not show that Fashions is attempting to obtain a free ride on the name and reputation of Sportswear.

Sportswear claims that the address 350 Fifth Avenue was used by Fashions in the Beatle promotion. That is the

**554**

address of Sportswear and also that of the defendant Reliance Manufacturing affiliated with Fashions. Fashions itself is located at 1400 Broadway. Yet the only samples of Fashions' advertising for Beatle goods which Sportswear has presented in support of its motion give the address of Fashions as 1400 Broadway where it has a "Beatle" showroom and where it carries on its Beatle business.

**■** Where allegedly infringing goods are non-competitive, though related, there is no real likelihood of confusion as to the goods themselves or their origin, and palming off or attempted free ride on another's goodwill and reputation have not been established, courts are reluctant to grant injunctive relief. Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp., 308 F.2d 196 (2 Cir. 1962); Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2 Cir.), cert. den., 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., 204 F.2d 223 (2 Cir.), cert. den., 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351 (1953); G. B. Kent & Sons, Ltd. v. P. Lorillard Co., 210 F.2d 953 (2 Cir. 1954), affirming per curiam 114 F. Supp. 621 (S.D.N.Y.1953); Federal Tel. & Radio Corp. v. Federal Television Corp., 180 F.2d 250 (2 Cir. 1950); S. C. Johnson & Son, Inc. v. Johnson, 116 F.2d 427 (2 Cir. 1940), 175 F.2d 176 (2 Cir. 1949), cert. den., 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

In such cases, assuming a valid and enforceable trademark, the owner has but two interests in obtaining such relief: (1) he may at some later date desire to produce the goods made by the alleged infringer, and (2) the inferior quality of the infringer's goods may damage his reputation.

The first of these interests plainly does not exist here and merits no discussion. Sportswear has no license to manufacture and sell Beatle goods and views any prospect of doing so with abhorrence.

As to the second interest, such evidence as Sportswear has presented does not persuade me that the Beatle goods are inferior in quality or workmanship. It must be granted that to many people at least the Beatle goods are singularly unattractive. But Sportswear has shown no actual injury and, even assuming some confusion in origin, any damage it may suffer is entirely speculative.

Sportswear has not established that either of the only two interests which it has here requires the protection of a preliminary injunction.

**■** There are other reasons why preliminary relief should not be granted.

Sportswear has not shown that, absent preliminary relief, it is likely to suffer irreparable damage. Moreover, Fashions is a large and long established corporation well able to respond in damages if any there be. See Hudson Pulp & Paper Corp. v. Swanee Paper Corp., 223 F. Supp. 617 (S.D.N.Y.1963); Gillette Co. v. Ed Pinaud, Inc., 178 F.Supp. 618 (S.D. N.Y. 1959).

While Sportswear charges Fashions with bad faith in using a name containing the word "Puritan" in the Beatle promotion, Fashions in turn charges Sportswear with unclean hands in using its own name on ladies' wear in derogation of Fashions' rights in what it claims to be its own exclusive line. These charges and counter-charges involve sharply disputed and complicated issues of fact which cannot and should not be resolved on a motion of this character. Federal Tel. & Radio Corp. v. Federal Television Corp., supra; American Radiator & Stand. San. Corp. v. Sunbeam Corp., 125 F.Supp. 839 (S.D.N.Y.1954).

Questions are raised as to the marks relied upon by Sportswear, the weakness of such marks in the light of the wide use of the word "Puritan" in the clothing, accessory and other fields as bearing on secondary meaning and the nature and extent of the rights claimed by Fashions because of its long and unchallenged use of the word "Puritan" in various combinations. These questions also in-

volve complicated questions of fact and no clear answer to them has emerged.

Finally, in any event, the balance of convenience is not sufficiently weighted in favor of Sportswear to justify the granting of drastic preliminary relief. The Beatle aberration is presumably an ephemeral and temporary one. Fashions has invested large sums in the Beatle promotion and has had a rush of business as a result. In all likelihood it has only a limited period within which to realize on its investment and its potential loss from the granting of the relief sought out-balances any benefits which Sportswear might derive therefrom. Meredith Pub. Co. v. Universal Pub. & Distrib. Corp., 199 F.Supp. 27 (S.D.N.Y. 1961), quoting from Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Model-etts Corp. v. Merck & Co., 118 F.Supp. 259 (S.D.N.Y. 1953).

It is unnecessary to go further. The motion for a preliminary injunction is denied in the exercise of my discretion.

There remains the question of the stay sought by Sportswear of the action against it and one of its customers brought by Fashions and a subsidiary in the United States District Court for the Southern District of California. That action, for unfair competition and alleged fraudulent registration of trademarks, questions the right of Sportswear to use the word "Puritan" in connection with women's apparel. The issues in that action are within the four corners of the complaint in the case at bar, which includes both men's and women's apparel and thus seeks broader relief than does Sportswear's motion for a preliminary injunction. The action there was started after this action had been commenced, and it can fairly be inferred that it was triggered by the present suit here.

Both Sportswear and Fashions are incorporated and have their principal place of business in the East. Presumably most of the witnesses and relevant records are in this part of the country, which is the logical place to try out the issues between the parties in a single suit. There is no reason why Fashions cannot raise all of the issues posed in the California action by counterclaim in the case at bar and, indeed, it has indicated its intention to do so.

The reason which Fashions advances for the institution of the California litigation is the up-to-date state of the docket in the Southern District of California. That claim has little merit in view of the fact that the docket in the Western District of Pennsylvania, the home district of Sportswear and convenient to both parties, is also current.

The differences in parties defendant is of no significance in view of the manifest ability of Sportswear to respond in damages to any judgments which might be rendered against it.

There is no good reason why two lawsuits in which the same issues are involved should be allowed to proceed simultaneously in two different federal courts. All the issues arising out of the controversy between the parties can and should be resolved in the action first started in this district. In the exercise of my discretion all further proceedings in the action commenced in the Southern District of California will be stayed pending the determination of the case at bar. See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Bechik Prods., Inc. v. Flexible Prods., Inc., 225 F.2d 603 (2 Cir. 1955); Peyser v. General Motors Corp., 158 F.Supp. 526 (S.D.N.Y. 1958).

The stay will be limited to the California action since it does not appear that any other suits are imminent or contemplated at this time.

This opinion will constitute my findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.

Settle order on notice.