SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

ANTOINE SILVER MINES, LTD.
(N.P.L.), et al., Defendants.

No. 68 C 1617.

United States District Court
N. D. Illinois, E. D.

Dec. 5, 1968.

John I. Mayer, Judith T. Joyce and William S. Gleeson, Chicago, Ill., for S. E. C.

Joseph E. Brunswick, Blue Island, Ill., for defendant Antoine Silver Mines.

Meredith, Marshall, McConnell & Scott, Vancouver, B. C., for defendants J. Royden Morris and Royden Morris & Co., Ltd.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

The Securities and Exchange Commission seeks a preliminary injunction prohibiting the defendants from selling unregistered securities of Antoine Silver Mines, Ltd. Since there is a reasonable likelihood that such sales may occur, thus violating sections 5(a) and 5(c) of the Securities Act of 1933, I grant the request. The injunction shall remain in effect only until there is a full hearing on the merits.

The evidence produced at a hearing on October 4, 1968 indicated that Antoine Silver Mines, Ltd. (N.P.L.), Republic Holdings, Ltd., Alladin Holdings, Ltd., and Royden Morris and Company, Ltd., are each organized under the laws of the Province of British Columbia, Canada, with their principal places of business in Vancouver, British Columbia. The Morris firm and Royden J. Morris are registered as a broker and a stock salesman, respectively, with the

British Columbia Securities Commission. Mr. Morris is an officer, director and controlling person of this company. William Bandeen is a director of Antoine, while Joseph Merrin is an employee of both Republic and Alladin. Robert Kopas is both a director and a controlling person of these latter two companies. His father, Joseph Kopas, is a controlling person of Antoine, Republic and Alladin [1] and has been a director of Antoine since March 1967.

At the hearing, only Antoine contested the injunction. Royden J. Morris and the Morris company had previously filed an affidavit opposing the request. As to the other defendants, the proceedings have been ex parte. The court has jurisdiction under section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and section 27 of the 1934 Securities Act, 15 U.S.C. § 78aa.

### I.  Unlawful Transactions

A Canadian corporation, Antoine is engaged in silver mining with over two million shares of stock outstanding. None of Antoine's shares have been registered under section 5 of the 1933 Securities Act.

In May 1967 and October 1967, respectively, Republic and Alladin began selling Antoine stock to United States residents through the Morris firm. The companies accumulated large blocks of Antoine stock from three primary sources: Joseph Kopas' personal shareholdings, the Canadian over-the-counter market, and a stock issue by Antoine. While the latter issue was ostensibly purchased by the Morris firm and sold to Canadian residents, these moves constituted an elaborate deception to obscure the actual buyers, Republic and Alladin.[2]

Sales to American residents ceased in January 1968, shortly after the SEC began investigating these transactions in December 1967. Specifically, soon after Robert Kopas learned of the Commission's activities, Republic and Alladin discontinued their United States sales. These corporations remain active, however, in promoting Antoine stock in Canada.

### II.  Antoine's Objections

Antoine introduced no evidence at the hearing except a SEC release. It also recalled one SEC witness for further testimony.

■■  The mining company protests the preliminary injunction for two principal reasons. First, it claims that section 4(4) of the 1933 Act [3] exempts its sales because purchase orders came to Morris without solicitation by Antoine or Morris. But, Antoine fails to qualify for this exemption because sales were solicited in the United States and because sales far exceeded the one percent limit permitted by SEC rule 154(b). United States meetings were conducted specifically to generate interest in the stock, and prospective purchasers were directed to place their orders with Lyle Gumm, an

---

1. With respect to Republic and Alladin, Joseph Kopas' status as a controlling person is indicated by his son's beneficial ownership of all shares of these companies, his statement that his son would act on his behalf in Republic, and his contribution to Republic of substantially all of its assets. Moreover, the two companies' actions demonstrated common control with Antoine; for example, Republic loaned money to Antoine and paid a fee due to the latter's financial public relations consultant.

A selling shareholder who is part of a control group stands in the same position as one who is in sole control, subject to the same prohibition against selling without registration. See SEC v. Micro-Moisture Controls, 167 F.Supp. 716 (S.D.N.Y.1958).

2. The prices of sales from Canadian residents to the two companies illustrated the sham nature of this transaction. The prices were approximately one-third less than the prevailing price for identical stock sold by the companies to American citizens.

3. That section excludes "brokers' transactions executed upon customers' orders on any exchange or in the over-the-counter market but not the solicitation of such orders."

employee of Republic. Moreover, an issuer of stock cannot escape liability under this section unless less than one percent of its stock is involved. See Stadia Oil and Uranium Co. v. Wheelis, 251 F.2d 269 (10th Cir. 1957); Securities Act Release 4818, page 1; 1 Loss, "Securities Regulation" 698 (2nd ed.). Compare Ira Haupt and Company, 23 SEC 589 (1946).

■ Second, Antoine's registration under section 12(g) of the Securities Act of 1934 allegedly obviates the need for registration under section 5 of the 1933 Act. These two registrations, however, serve different functions. To illustrate, the latter section requires that a prospectus containing pertinent data be supplied to all prospective purchasers while the former statute does not contain a similar provision. Furthermore, section 6(a) of the 1933 Act specifically provides for registration statements by foreign issuers. See also Securities Act Release No. 4240, page 1.

In addition, Antoine claims the injunction will hinder its ability to obtain financing. But the injunction will only restrain future sales of unregistered stock. If financing becomes difficult, it will be because investors lose faith in the company. See SEC v. Culpepper, 270 F.2d 241 (2nd Cir. 1959); Associated Securities Corp. v. SEC, 283 F.2d 773 (10th Cir. 1960).

### III. Preliminary Injunction

■■ In accordance with 15 U.S.C. § 77t,[4] a preliminary injunction is necessary to restrain the defendants from further illegal sales. An injunction may be justified merely because there are past violations of the securities laws. See SEC v. Mono-Kearsarge Consolidated Mining Co., 167 F.Supp. 248, 261 (D.

Utah 1958). Since these defendants did not cease selling to United States residents until the SEC commenced its investigation,[5] there is a reasonable likelihood of future violations. See SEC v. Culpepper, 270 F.2d 241 (2nd Cir. 1959). The likelihood is not diminished by the passage of a reasonable period of time since the last sale. See SEC v. Electronic Securities Corp., 217 F.Supp. 831 (D. Minn.1963). Accordingly, the defendants are "about to engage"[6] in statutory violations, and a preliminary injunction is required. SEC v. Keller Corp., 323 F. 2d 397, 402 (7th Cir. 1963); SEC v. Universal Service Assn., 106 F.2d 232, 239–240 (7th Cir. 1939).

■ On the other hand, the injunction will not preclude the sale of all unregistered securities by the defendants since such a provision would be overly broad. See, e. g., NLRB v. Express Publishing Co., 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930 (1941). The evidence produced at the hearing only demonstrated illegal sales of Antoine stock; it did not show a general pattern of sales of other unregistered securities. Compare Bowles v. Montgomery Ward & Co., 143 F.2d 38, 42 (7th Cir. 1944).

### IV. Unregistered Brokers

The Morris firm has been engaged as a broker in securities, though not registered with the SEC pursuant to section 15(b) of the 1934 Act, 15 U.S.C. § 78o (b). It has used the mails and other instrumentalities of interstate commerce to effect transactions in non-exempt securities otherwise than on a national securities exchange. Moreover, Royden J. Morris caused this company to perform said practices.

■ An additional injunction restraining these two defendants from con-

---

4. That section authorizes injunctions "whenever * * * any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, * * * upon a proper showing * * *."

5. Although Antoine ceased selling stock before the start of the SEC investigation, its actions cannot be viewed in isolation. Controlled by Joseph Kopas, Antoine was a convenient source of stock in the past and could easily become such a source again.

6. See note 4 *supra*.

tinuing their practices, however, does not appear necessary at this time. The parties voluntarily provided all material records to the SEC to aid its investigation. The stock brokerage firm has not carried on active business since May 1968, more than three months before the SEC instituted this suit. Moreover, as indicated above, the two parties will be enjoined from illegally selling Antoine shares.[7]

In this situation, there is no reasonable likelihood of future violations of either of these defendants, and an injunction is not required. See SEC v. Franklin Atlas Corp., 154 F.Supp. 395 (S.D. N.Y.1957).

### V. Conclusion

Accordingly, I have today entered the following order. Pending a final determination on the merits, the defendants Antoine Silver Mines, Ltd. (N.P.L.), Joseph Kopas, William Bandeen, Royden Morris & Co., Ltd., Royden J. Morris, Republic Holdings, Ltd., Robert Kopas, Joseph Merrin, and Alladin Holdings, Ltd., their officers, agents, servants and employees, attorneys and each of them are restrained and enjoined from directly and indirectly, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell shares of Antoine Silver Mines, Ltd.; or carrying such securities or causing them to be carried through the mails or in interstate commerce by any means or instruments of transportation for the purpose of sale or for delivery after sale unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities; or making use of any means or instruments of transportation or communication in interstate commerce, or of the mails to offer to sell such securities through the use or medium of a prospectus or otherwise unless and until a registration statement has been filed with the Securities and Ex-

change Commission as to such securities, or while a registration statement as to such securities is the subject of a refusal order or stop order issued by the Securities and Exchange Commission or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act of 1933, as amended (15 U.S.C. § 77h); provided that the foregoing shall not apply to any securities or transactions which are exempt from the provisions of Section 5 of the Securities Act of 1933, as amended.

---

7. In addition, the court retains jurisdiction so that an injunction shall immediately issue if either defendant resumes acting as an unregistered broker. *Compare* United States v. Parke, Davis & Co., 365 U.S. 125, 81 S.Ct. 433, 5 L. Ed.2d 457 (1961).