826

MORRIS STRUHL, Inc., Plaintiff,

v.

RELAXOR CUSHION CORPORATION,
Defendant.

United States District Court
S. D. New York.
May 21, 1958.

Robert D. Spille, New York City, for plaintiff, John A. Mitchell, New York City, of counsel.

Louis G. Greenfield, New York City, for defendant.

SUGARMAN, District Judge.

On March 5, 1958 the plaintiff Morris Struhl, Inc. filed its complaint against the defendant Relaxor Cushion Corporation. Both the plaintiff and defendant are New York corporations with their principal places of business in New York City.

The complaint bases jurisdiction "on the Trade-Mark Act of 1946 known as the Lanham Act, and particularly on 15 U.S. C. § 1121 and 1125(a)."

It charges that the plaintiff, for many years a manufacturer of health and beauty aids, which are sold under its registered trademark "Chic" has established a reputation for the reliability and quality of its products; that in the fall of 1957 plaintiff began manufacturing, as the original and first manufacturer there-

of, a new and distinctive electric massage pillow under its trademark "Chic"; that it used in connection with that effort distinctive and original "trademark symbols." The complaint then states that the plaintiff's vibrator pillow is scientifically designed, has a therapeutic value, is made in a selected shape and of materials tending to please and attract the purchasing public and contains a vibrator unit of fine mechanical and electrical design and manufacture. It is further alleged that the plaintiff has extensively advertised its product, its appearance and its method of use, to the extent of an annual appropriation of about $400,000 per annum (of which $100,000, according to the moving papers on this motion, has been spent to date) with such success that the initial quantities produced were quickly exhausted, requiring increased production. It is also alleged that an application for a patent, whereof plaintiff is the exclusive licensee, is pending in the United States Patent Office. It is then charged that the defendant, in order to deceive and confuse the purchasing public, now manufactures and sells in interstate commerce a vibrating pillow which is a slavish copy of the plaintiff's pillow. It is charged that the vibrator unit, the padding, the covering material, the shape, the size and the detail of the defendant's product have substantially the same dimensions, configuration and design which were arbitrarily selected by the plaintiff for its unit. It is further charged that the defendant in advertising its product has imitated the "trademark symbols" used by the plaintiff in advertising its pillow or has caused others to do so; all of which it is said was intended to falsely represent the source or origin of the goods. Finally it is alleged that the defendant was incorporated in January 1958 for the sole purpose of copying the plaintiff's device, to the irreparable damage of the plaintiff. The complaint then seeks a temporary and permanent injunction, an accounting, punitive damages and a reasonable attorney's fee.

The defendant answered in substance denying the allegations of the complaint and raising certain affirmative defenses. The plaintiff now seeks a preliminary injunction.

On the papers before me and the competing devices offered at the argument of the motion, there is little doubt that in almost every detail the defendant's product is an exact copy of the plaintiff's device except that the defendant attaches to its vibrator a 10-foot electric cord with a cut-off toggle switch, whereas the plaintiff's pillow has an 8-foot cord with no switch.

It appears that the "various distinctive and original trademark symbols," to which the plaintiff alludes in its complaint, are a number of sketches, appearing in advertisements by Stern's, B. Altman & Co. and Bonds in New York newspapers, offering the plaintiff's device. They depict a young woman in various postures using the plaintiff's pillow for the application of the (as claimed in the complaint) "gentle and deep-tone * * * pleasant and soothing" massages to various parts of her anatomy, i.e., the small of the back, the stomach, the thighs, the hips and the neck. It also appears that in the advertising of Gimbels' in a Milwaukee newspaper, and Macy's in a New York newspaper offering the defendant's device, the sketches are almost identical with those employed by the vendors of plaintiff's device.

Stern's advertisement, offering the plaintiff's device, identifies it as the "Chic Electric Vibra-Cushion & Massager." Bonds' advertisement, offering the plaintiff's device, identifies it as the "Chic Electric Vibra Massage Pillow." Altman's advertisement, offering the plaintiff's device, identifies it as an "electric Vibra Massage Pillow * * * by Chic." Gimbels' advertisement, offering the defendant's product, identifies it as a "new 'Re-laxor' electric vibrating pillow." Macy's advertisement, offering the defendant's product, identifies it as "The Re-Lax-Or Electric Vibra Cushion."

The cushions pictured in all of the advertisements are alike except that the Gimbels' and Macy's advertisements

**828**

clearly show the switch in the electric wire of the defendant's pillow.

■■ Before plaintiff may succeed in the drastic relief of preliminary injunction which it seeks, it must make a showing of the probability of ultimate success.[1] This plaintiff has failed to do.

All that plaintiff shows is that (a) defendant markets a "Chinese copy" of its product almost to the final detail and (b) vendors of defendant's product employ, in their advertising, sketches illustrating its use which are almost identical with those employed by vendors of plaintiff's device for the same purpose.

The mere close similarity of defendant's product to that of plaintiff, standing alone, is insufficient.[2] There is no claim here of patent infringement and no proof of secondary meaning.

■ The illustrative sketches used by the plaintiff's retail outlets in demonstrating the various uses of its device are not "trademark symbols" as claimed in the complaint and even if they were, there is no proof that they are calculated to deceive the public and pass off defendant's goods as plaintiff's.[3]

Finally, this court entertains doubt (but not sufficient in the absence of more proof to dismiss the complaint *sua sponte*) that this court has jurisdiction of this suit. As pointed out above, the complaint acknowledges no diversity. Unless a federal statute gives jurisdiction the claim for unfair competition alone cannot vest jurisdiction in this court.[4] It is certainly not free from doubt whether the Lanham Act[5] upon which plaintiff bases jurisdiction applies to the facts here presented.[6]

For the foregoing reasons the plaintiff's motion for a preliminary injunction is denied.

This decision shall serve as the court's findings and conclusions.[7]

It is so ordered.

1. Yonkers Raceway, Inc., v. Standardbred Owners Ass'n, D.C.S.D.N.Y.1957, 153 F. Supp. 552.

2. Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-le-Coultre Watches, 2 Cir., 1955, 221 F.2d 464, 466. "Absent a design patent or a secondary meaning, of course there would be no actionable harm. * * *" Citing Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416.
   Cf. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 118, p. 395.

3. Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, certiorari denied 1950, 339 U.S. 948, 70 S. Ct. 802, 803, 94 L.Ed. 1362.

4. 28 U.S.C.A. § 1338(b).

5. 60 Stat. 441, § 43, 15 U.S.C.A. § 1125.

6. Cf. L'Aiglon Apparel, Inc., v. Lana Lobell, 3 Cir., 1954, 214 F.2d 649, where the defendant used a photograph of plaintiff's product in selling an inferior product.

