50 CCPA

**LIBRASCOPE, INCORPORATED (now by Merger Librascope Division General Precision, Inc.), Appellant,**

v.

**LIBRAPHONE, INC., Appellee.**

Patent Appeal No. 6883.

**LIBRASCOPE, INCORPORATED (now**

United States Court of Customs and Patent Appeals.

March 20, 1963.

Rehearing Denied May 10, 1963.

Almond, J., and Worley, C. J., dissented.

Theodore H. Lassagne, Glendale, Cal., Jas. M. Naylor, Naylor & Neal, San Francisco, Cal., for appellant.

Charles R. Allen, Jr., Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

SMITH, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 131 U.S.P.Q. 76, which dismissed appellant's opposition to appellee's application[1] for registration of the mark "Libraphone" in association with a design showing a row of books and the horn portion of a speaker. The mark is used on "grooved phonograph records." Opposer-appellant, the prior user, asserted in its Notice of Opposition that the mark sought to be registered is confusingly similar to its registered trademark "LIBRASCOPE."[2]

The record consists of stipulated testimony which the Trademark Trial and Appeal Board summarized as follows:

"According to the testimony, opposer, through its predecessor in title, first used the trademark 'LIBRASCOPE' in the year 1937 on a special type computer for determining the position and load center in an airplane. During the 1940's, opposer expanded its business under the mark to include other types of computers, and in the early 1950's to include other types of scientific instruments such as read/record heads for recording or reading digital computers and other data recording apparatus. In 1954, opposer introduced to the commercial market a 'LIBRASCOPE' demagnetizer, which is an electrical device for removing prior recordings from magnetic tape, thereby making the tape ready for reuse, and in the same year it began marketing, under the mark 'RECORD LIFE', a liquid preparation for the surface treatment and cleaning of photograph [sic] records. Applicant's[3] trade name appears in the advertising and on the packages in which such preparations are sold. During the year 1956, opposer expended approximately $100,000 in the advertising of its various 'LIBRASCOPE' products.

"Applicant's record shows that it is engaged in the marketing of phonograph records, known in the trade as 'talking books' because they consist of complete renditions of books by theatrical artists, under the mark 'LIBRAPHONE.' Such phonograph records are generally sold by applicant to hospitals, libraries, schools, and like institutions, and applicant's advertising in newspapers and trade publications is directed to such institutional users. In connection with the sale of its recordings, applicant also advertises and sells record players, earphones, and turntable adapters under the trademark of the manufacturer thereof. In addition thereto, the record players also bear applicant's mark 'LIBRAPHONE.'"

We agree with the Trademark Trial and Appeal Board that:

" * * * opposer's magnetic tape demagnetizer and phonograph record cleaner, and applicant's phonograph records must be considered as products which would normally move through the same channels of trade to the same class of purchasers and

---

1. Ser. No. 35,661, filed Aug. 16, 1957.

2. Opposer's exhibits K through P, inclusive, are copies of the following registrations for the word "LIBRASCOPE" alone for use on a variety of goods.

| Certificate No. | Date |
|---|---|
| 372,767 | November 14, 1939 |
| 584,648 | January 12, 1954 |
| 587,287 | March 23, 1954 |
| 612,471 | September 20, 1955 |
| 620,318 | January 31, 1956 |
| 643,924 | April 9, 1957 |

3. The word "Applicant's" apparently should be "Opposer's."

are of such character that they might readily be assumed to originate with the same producer if sold under the same or similar marks."

■ Therefore, the sole issue presented is whether the mark sought to be registered, "Libraphone" and its design, so resembles the registered mark, "LIBRASCOPE", "as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers." 15 U.S.C. § 1052(d).

In comparing the *marks* as applied to the goods, the board concluded that:

> "While both applicant's 'LIBRAPHONE' and opposer's 'LIBRASCOPE' contain the term 'LIBRA' as the prefix portion thereof, it is readily apparent that the prefix of applicant's mark is derived from and suggests the well-known Latin word meaning 'book'. The prefix of opposer's mark and/or trade name, as used in connection with its goods, would have no such connotation to purchasers thereof. Since 'LIBRAPHONE', on the one hand, and 'LIBRASCOPE', on the other, otherwise differ in sound, appearance, and significance, it is concluded that, despite the common occurrence of the prefix 'LIBRA' in both, there is no reasonable likelihood of confusion, mistake or deception of purchasers."

We do not agree with this conclusion. Even if we were to assume as the board did that the prefix "LIBRA" is in fact derived from the Latin word "liber," it is unlikely that the average purchaser, whether he had a knowledge of Latin or not, would, in the act of purchasing the goods to which such marks are applied, take the time to analyze the marks so carefully and find, as did the board, the subtle and latent differences in meaning for the common prefix "LIBRA". Even assuming that a purchaser would apply to the two marks the semantic analysis which gives rise to the different meanings found by the board, the fact remains that the word "LIBRA" in each mark is *identical in both sound and appearance.*

In comparing the marks in their entireties, it is our opinion that there are sufficient similarities between "LIBRASCOPE" and "Libraphone," when applied to the goods, that confusion, mistake or deception of purchasers is likely.

While prior decisions usually are of little value in determining likelihood of confusion between any two specific marks, the marks here in issue, consisting of a common portion ("LIBRA") and a terminal word of common meaning ("PHONE" and "SCOPE"), must be analyzed as this court did in the case of L. & C. Hardtmuth, Inc. v. Fabrique Suisse De Crayons Caran D'Ache S.A., 287 F.2d 599, 48 CCPA 873. In finding likelihood of confusion between applicant's "Techograph" and opposer's "Technicrayon" and "Techniflex", Judge Rich stated that:

> "Whatever may be said about the right hand ends of the marks, there is substantial identity in the left hand ends. 'Techni-' or 'Techno-' appears to be quite arbitrary as applied to pencils and there is but an insignificant difference between the two forms. It seems to us to be the striking or conspicuous or dominant portion of all of the marks as well as the portion of greatest trademark significance. * * *"

■ When so analyzed, it is our opinion that there are sufficient similarities between "LIBRASCOPE" and "Libraphone", as applied to at least some of the goods of the respective parties that confusion, mistake or deception of purchasers is quite likely. While we have no doubts as to this conclusion, should any doubt exist, it should be resolved against applicant, who as the later user, is the newcomer. L. & C. Hardtmuth, Inc. v. Fabrique Suisse De Crayons Caran D'Ache S.A., supra.

For the foregoing reasons, the decision of the Trademark Trial and Appeal Board is reversed.

Reversed.

ALMOND, Judge, dissenting, with whom WORLEY, Chief Judge, joins.

It is with deference and regret that I find myself in disagreement with the decision of the majority.

While appellee concedes that the board was not in error in concluding that appellant's surface cleaner for phonograph records could be sold through the same channels of trade and to the same class of purchasers as appellee's grooved phonograph records, it is significant, however, that the trademark "LIBRASCOPE" is not used on the surface cleaner. The appellant distributes this product under the trademark "RECORD LIFE," dominantly displayed on the package container with the corporate name "Librascope, Incorporated" appearing on the package in relatively minor dimensions. Presumably, the present corporate name of "Librascope Division General Precision, Inc." would now be substituted for the old name on this product. The corporate name is so utterly dwarfed in every aspect by the mark "RECORD LIFE" to persuade me to eliminate the exhibit and the product which it represents as having no ascertainable probative value in support of appellant's position on the issue of confusion.

With the elimination of any material significance to be attached to the mark "RECORD LIFE" and the product marked, the only goods even remotely similar to appellee's phonograph records is appellant's tape demagnetizer. The difference between these goods is a factor I consider relevant to the issue of likelihood of confusion.

The burden of the conflicting contentions of the parties revolves, in major part, around the similarity of the two marks, "LIBRAPHONE" with a row of books and a horn and "LIBRASCOPE."

It is well settled that marks must be considered in their entireties. While it may be necessary to dissect marks in analyzing similarities and differences, the final determination of the issue requires a comparison of the entire marks.

In re Dobeckmun Company, 286 F.2d 187, 48 CCPA 810.

Appellant contends that its mark "LIBRASCOPE" is both arbitrary and fanciful, thus imparting to it a measure of protection sufficient to exclude appellee's mark from the register. In this connection it is further stated that "The record herein is wholly silent as to any fact or claim that 'LIBRASCOPE' has any significance whatsoever or that it is anything other than a coined word."

An examination of the record leads me to a different conclusion. The Meredith Instrument Company, founded in 1937, engaged in the manufacture and sale of a special type of computer for determining the position of the load center in an airplane. The trademark "LIBRASCOPE" was applied to such instruments in July 1937. In 1939 Librascope, Incorporated succeeded to the entire business of the Meredith Company, continuing the use of "LIBRASCOPE" as a trademark for its products consisting of various models of balance computers. In addition, on opposer's balance computers there is attached to the mark "LIBRASCOPE" and displayed prominently therewith the figure of a pair of scales in balance embellished with stars. It is reasonable to assume that the scale representation with stars bears and was intended to bear some relative indication as to the meaning of the mark "LIBRASCOPE" in its entirety.

Taking judicial notice of Webster's New International Dictionary, Second Edition, Unabridged, one of the meanings attributed to Libra is "a balance, the Roman pound" in Latin. Another is "A southern zodiacal constellation * * * represented by a pair of scales; the Balance." The word "-scope," is defined as "a combining form denoting a means, usually an instrument."

The conclusion, therefore, seems inescapable to me that neither mark is "arbitrary and fanciful." Each, dissected by prefix and suffix, is invested with dictionary meaning. Each, by entirety with its respective figure representations, suggests and connotes an object.

584

It is my view that appellee's contention that "LIBRAPHONE" when coupled with the figure representation of a row of books and the speaker or horn suggests a library of sound, is a logical conclusion supported by the record.

I find sufficient support for the conclusion that the prefix "LIBRA" combined with the respective suffixes, "SCOPE" and "PHONE," suggests dissimilar connotations.

The majority suggests that the average purchaser would not "take the time to analyze the marks." It seems to me that the average purchaser, on seeing the composite mark of a row of books and a speaker horn with the term "LIBRAPHONE," would have some connotation of *books*. The average purchaser need not know that "library" is derived from the Latin "librarius" to associate the former word with books. Since appellee's goods have not the slightest connection with books of any kind, let alone the "talking books" or a "library of sound" to which appellant's mark is applied, the term "LIBRASCOPE" would not have the same connotation as appellee's composite mark.

I find no support of record for appellant's inference that appellee's selection of "libra" instead of "liber" was directed by a deliberate intention to trade upon appellant's good will. On the contrary, the stipulated testimony of the witness, Ditlow, president of Libraphone, Inc., discloses that appellee was not aware of appellant's name or trademark prior to its adoption of the trademark "LIBRAPHONE," since appellant was not known in the field of "talking books," and that appellee adopted the name "LIBRAPHONE" from the Latin word "librarius," meaning "book," and the Greek word "phone," meaning "sound." The record discloses no instance of confusion relating to the use of the two trademarks. I find no intimation, either by fact or circumstance, in refutation of this conclusion.

For the foregoing reasons I would hold that, notwithstanding the common occur-rence of the prefix "LIBRA" in both, the marks "LIBRAPHONE" and "LIBRASCOPE," when considered in their entireties, differ so distinctly in sound, appearance and connotation that there would be no reasonable likelihood of confusion, mistake or deception of purchasers.

I have not left unnoticed the authorities cited by the majority and by counsel for the respective parties. Each trademark case must, in final analysis, stand on its own merits. Previously decided cases provide meager assistance in resolving the issue of confusion relating to future trademarks. Finn v. Cooper's Incorporated, 292 F.2d 555, 48 CCPA 1132.

I would therefore affirm the decision of the Trademark Trial and Appeal Board.