**SUNRISE HOME JUICES, INC.,**
Plaintiff,

v.

**The COCA-COLA COMPANY,**
Defendant.

United States District Court
S. D. New York.
Aug. 7, 1963.

Ostrolenk, Faber, Gerb & Soffen, New York City, for plaintiff.

Kenyon & Kenyon, New York City, for defendant.

RYAN, Chief Judge.

Pending the trial and outcome of this suit for a permanent injunction and an accounting, plaintiff seeks to enjoin defendant from offering for sale or selling its breakfast drink frozen concentrate "Orange Delight" in certain parts of the New York metropolitan area, including counties in the States of New York, New Jersey and Connecticut. Plaintiff contends that the threatened use by the defendant of the name "Orange Delight" for its product will substantially impair plaintiff's common law right in its name "Orange Delite" for its orange juice product beverage.

The name used by plaintiff "Orange Delite" has not been registered as a trademark.

Simply stated, plaintiff claims that a secondary meaning has developed in the name "Orange Delite" which, in the purchaser's mind, associates plaintiff with the name as the source of that product, and that plaintiff's use of the name "Orange Delite" was known to the defendant at least two years prior to its adoption of the name "Orange Delight" for its drink. This, says plaintiff, is evidence of defendant's intent and purpose to palm off its orange juice substitute as plaintiff's product and trade on plaintiff's reputation and name. No claim of copying is made as to packaging, color, labels; merely as to the name. The injury to plaintiff results, according to plaintiff, from the fact that (1) plaintiff's name and reputation will suffer by reason of its being associated with defendant's cheaper substitute

drink, (2) the quality and value of its mark will be diluted by defendant's sales campaign, (3) the confusion which is likely to result will curtail plaintiff's business and produce irreparable harm, and (4) defendant will profit unfairly from plaintiff's work and efforts to enter the field in the area in suit.

For plaintiff to obtain a preliminary injunction, it must establish a likelihood of success in obtaining a permanent injunction on either a finding of secondary meaning or an intent on the part of defendant to palm off its goods as plaintiff's or misappropriate something that belongs to plaintiff. Such a finding, of course, presupposes irreparable harm.

Plaintiff has been in the business of manufacturing and distributing fruit juice products since 1951, among them was the orange juice product sold and marketed under the name "Orange Delite". Plaintiff's product "Orange Delite" is sold ready to drink in ½ gallon jugs by the milk distributors which make home deliveries; it has besides "Orange Delite", a "Grapefruit Delite", an "Orange-Grapefruit Blend", "Grape" and "Grapefruit-Pineapple". In fact, in its advertisement for home delivery, it is expressly stated "not sold in retail stores".

Recently, it appears that plaintiff's product has been sold through a very limited number of grocery stores. The bulk of plaintiff's sales are, however, through independent distributors, operating truck routes to bars and grills, dairies and homes.

Plaintiff has used direct advertising techniques for its product such as the distribution of circulars by various dairies delivering milk to customers, sponsoring contests among the truck drivers of these dairies, demonstrations in the retail grocery stores by means of samples and demonstration, and the use of displays. Plaintiff also promoted the sale of its product to bars for use as drink mixers. It also advertised by radio, in a trade newspaper and on menus of restaurants. Most of plaintiff's home delivery sales and advertising have been concentrated in Nassau and Queens Counties, where its bottling plant is located, but gradually it has expanded these sales and promotion to Westchester, New York City, Suffolk County, Fairfield County, Connecticut, and some nearby New Jersey counties. According to plaintiff, the sales of "Orange Delite" have grown from $30,000 in 1952 to about $600,000 in 1963, and represented about 85% of plaintiff's entire business throughout this period.

Unquestionably, plaintiff developed its business from a small, unprofitable manual operation to a large, automatic operation, with a plant, a small fleet of trucks and up-to-date equipment, servicing from 8,000 to 9,000 retailers. It has spent much time, money and energy to develop its product and its efforts have been successful.

There is no dispute but that plaintiff has used the name "Orange Delite" for its orange juice product continuously for some time. No evidence has been presented as to a similar use of this name in this area, although the name "Orange Delight" and "Delite" has been used apparently in other localities.

This unfair use of the name by defendant, says plaintiff, facilitated the entry of defendant into the field by creating "natural acceptance" of defendant's product by the public already familiar with plaintiff's product.

Defendant is a well-known and successful company, one of whose divisions, the Minute Maid Company, is one of the largest producers of frozen citrus and other fruit juices in the United States, the sales of which represent 50% of defendant's total sales. Minute Maid is a registered trademark in constant use since 1946.

In 1961, plaintiff evinced interest in "Minute Maid" products and ordered some samples of California Lemon Juice from defendant.

Unlike plaintiff's product, defendant's juice is frozen and sold in metal cans which must be defrosted and mixed with

water. Defendant's frozen fruit juices are widely known.

Because of the current shortage of oranges in 1963, defendant decided to offer for sale a new frozen orange product similar to orange juice but which was not pure orange juice but "a concentrate for orange drink". A trademark search was made and disclosed a California company's registration in 1930 of the mark "Orange Delight" for soft drinks and syrups which had not been renewed or assigned and that the company had gone out of business.

Approximately $2,000,000 was spent by defendant in heralding the entry of its new product in the market—of which about $300,000 was allocated to the geographic area in suit—all various and costly advertising methods being employed to insure its acceptance. Final arrangements were made and the design for the label on the cans which bore the trademark "Minute Maid" with notice of registration, and below it, in a smaller lettering, the words "Orange Delight", was sent to the canning plant on February 15, 1963. The same 6 oz. metal can was used on all of defendant's other juices.

Defendant's labels are lithographed on the cans, while plaintiff's are pasted on quart and ½ gallon bottles. In all respects—color, printing and design—they are completely different.

It was only at about this time that defendant learned of plaintiff's use of the words "Orange Delite" and it requested immediate samples of plaintiff's product and labels. Having examined these, defendant was advised and concluded that its use of the words "Orange Delight" for its concentrated canned product would not infringe plaintiff's use of this name for its unconcentrated orange product bottled in glass because plaintiff's use of the word was descriptive of its product and was not being used as a trademark. Defendant states that it felt that there could be no possible confusion between plaintiff's product and defendant's, which bore the customary mark "Minute Maid". It had spent much money and time in advertising and preparation for sales; it concluded that it was legally entitled to proceed with its plans.

According to defendant, the first intimation it had of plaintiff's claim was approximately in March, 1963, after defendant had entered the market by shipping over 13,000 cases of "Orange Delight" to the metropolitan market and after most of the advertising had been contracted for by it. Defendant categorically denies knowing prior to this time of plaintiff's use of the words "Orange Delite" in connection with its product. A question of fact is raised here.

Defendant's principal argument is that the words "Orange Delite" are used by plaintiff to describe its product in the same way that it describes its other products—"Banana Delite", "Grape Delite", etc.—and in the same way that "Delight" is used by defendant to describe a concentrated product which is not "juice"; that, in order to acquire any property right in these words, plaintiff must establish that they have acquired a secondary meaning so that the public, in seeing those words "Orange Delite", connects them with plaintiff's product and confuses defendant's product with plaintiff's. Defendant then further contends that the words "Orange Delite" have no secondary meaning and that defendant's product is so clearly and obviously marked twice on the can with the words "Minute Maid", in the same size and type can used by defendant for all its juices and so completely different in essence and packaging from plaintiff's as to make it impossible for anyone to confuse the two. Defendant then continues that its product is sold only in the frozen food sections of retail grocery stores, not in the dairy department; that it is not sold to bars or restaurants; nor door-to-door nor through dairy trucks; and it is not sold or recommended as a mixer for drinks as is plaintiff's product.

The word "Delight" used by defendant and "Delite" used by plaintiff,

upon the evidence now before us, appear to have been used in a descriptive rather than in a trademark sense. Upon the present showing, it may well be held that plaintiff sold its product under the name "Sunrise" but employed the phrase "Orange Delite" where it would describe the kind of juice and where it would be looked for by the observer, as "Sunrise" Lemon Juice and "Sunrise" Orange Delite, "Sunrise" Dry Punch; much in the same way that defendant in conjunction with "Minute Maid" mark used the word "Orange Delight" in the spot where it ordinarily described the juice as "Minute Maid" Lemon Juice, Grape Juice, etc. It seems clear that the mark characteristic of the product is "Sunrise" for plaintiff and "Minute Maid" for defendant.

In addition, plaintiff has used the word "Delite" in various combinations such as "California Orange Delite" and at others "orange delite and all other flavors". At times, plaintiff has capitalized and printed the word "delite"; at other times, it has used script form and small letters. In all cases, the word "Sunrise" was given especial uniform prominence, thus creating the impression that it is the registered trademark "Sunrise" which identifies plaintiff's product. Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 F. 657 (6th Cir.). Plaintiff has never on its labels or in its advertising laid claim to trademark or proprietary rights in the words "Orange Delite" or "Delight". From this use, it might at trial be held that the word "Delite" was not being used in a trademark sense but in a descriptive sense —to describe what was a juice product —and that this description varied according to the need or whim of plaintiff.

The next question then presented is whether plaintiff's product had become so associated in the mind of the public with the phrase "Orange Delite" or "Delight" as to evoke in that mind the belief that the product emanated from plaintiff. Feathercombs v. Solo Products Corp., 2 Cir., 306 F.2d 251. In view of plaintiff's comparatively limited sales in a limited geographic area, one is not led to an irresistible conclusion that it has become so well known that a secondary meaning has attached to these words; indeed, a serious doubt arises as to this without a further showing. The only proof offered by plaintiff in this respect is most equivocal; in substance, it was from four dealers (grocery, storekeeper and drivers of trucks) who said that the only "Orange Delite" they knew was plaintiff's, that "originating with Sunrise". This is not a showing of the "ultimate consumer recognition" essential to establishing a secondary meaning. American Luggage Works, Inc. v. United States Trunk Co., D.C., 158 F. Supp. 50.

The two juices are reaching essentially different markets and consumers; there is no showing that plaintiff would be irreparably damaged by defendant's use. With the sworn statements of defendant's responsible officers and the undisputed fact of a trademark search, we cannot now hold that plaintiff has established that defendant acted in bad faith and deliberately appropriated any property right plaintiff might have acquired.

There is no evidence or claim that defendant attempted to pass off its product as that of plaintiff's—the evidence is quite to the contrary. Defendant would not have invested the tremendous amount of money it did to advertise a new "Minute Maid" product and at the same time attempt to confuse the public into thinking it was a "Sunrise" product —it defies all common sense.

A glance suffices to dispel any claim of confusion. The products are totally different and packaged in a totally different manner. Much less distinction between competing products was present in Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (C.A. 2, 1959), where the Court found no likelihood of confusion although, unlike here, the products there had the identical purpose and were sold in the same market. See also Speedry Products v. Dri Mark Products, Inc., 271 F.2d 646 (C.A. 2, 1959).

On the undisputed facts, it is impossible to say that the "primary significance of the term [ORANGE DELITE] in the minds of the consuming public [was] not the product but the producer". Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118–119, 59 S.Ct. 109, 113–114, 83 L.Ed. 73.

Aside from all else, plaintiff has failed to establish irreparable harm.

Motion is denied. So ordered.