**CAR–FRESHNER CORPORATION and Jules Samann, Plaintiffs,**
v.
**TURTLE WAX, INC., Defendant.**
**No. 67 Civ. 786.**

United States District Court
S. D. New York.
May 1, 1967.

Arthur, Dry, Kalish, Taylor & Wood, for plaintiffs, Harvey E. Bumgardner, Jr., New York City, Robert F. Conrad, J. Russell Verbrycke, III, Washington, D. C., of counsel.

Shenier & O'Connor, New York City, for defendant, Henry L. Shenier, Francis M. O'Connor, New York City, Prangley, Baird, Clayton, Miller & Vogel, David A. Vogel, Chicago, Ill., of counsel.

## OPINION

HERLANDS, District Judge:

This is a motion for a preliminary injunction to enjoin defendant Turtle Wax, Inc., pending the determination of this action,[1] from infringing United States Registered Trademark No. 675,796 entitled "CAR-FRESHNER", an air deodorizer. The trademark is owned by plaintiff Jules Samann; it is being used by plaintiff Car-Freshner Corporation under an exclusive license granted by Samann. The conduct on defendant's part sought to be restrained is, generally stated, the selling, offering for sale or advertising in New York City, or elsewhere in the United States, of air deodorizers under the designation "CAR FRESHENER".

The first use of the trademark, "CAR-FRESHNER", took place in 1952 by Car-Freshner Company, then a partnership

---

1. The complaint in the action, filed February 24, 1967, pleads two causes of action, one charging defendant with trademark infringement under the Lanham Act, 15 U.S.C.A. § 1051 et seq.; the other charging unfair competition. The first claim is asserted in behalf of both plaintiffs—Samann as the registered trademark owner and Car-Freshner Corporation as Samann's exclusive licensee. The second claim is solely in behalf of Car-Freshner Corporation.

of the plaintiff Samann and another person. In 1953, Samann became sole owner of this company. In 1954, Car-Freshner Corporation, the corporate plaintiff, became incorporated in New York State and succeeded to Car-Freshner Company. Its principal place of business is Watertown, New York.

Since its formation, the corporate plaintiff has had the exclusive right to use the trademark "CAR-FRESHNER", Samann (as owner of the trademark) having granted it an exclusive license to use this mark in the United States.

Samann has been a member of the board of directors of the corporate plaintiff continuously since 1954. He has been and is completely informed at all times of the day-to-day operations of the corporation. He has submitted an affidavit in support of the present motion.

Since 1952, the corporate plaintiff or its predecessor has sold products under the trademark "CAR-FRESHNER"; and since 1953 such sales have been nationwide. Sales by the corporate plaintiff and its predecessor since 1952 under the "CAR-FRESHNER" trademark have been as follows:

|  | U.S.A. | Foreign |
|---|---|---|
| Deodorizer | 18,583,000 | 669,000 |
| Chrome Cleaner | 1,252,000 | 368,000 |
| Window Cleaner | 98,000 | 11,000 |
| Total | 19,933,000 | 1,048,000 |

The application for the registration of plaintiff's trademark "CAR-FRESHNER" was filed September 17, 1957. The trademark was registered by the United States Patent Office as Registration No. 675,796 on March 24, 1959 for absorbent bodies impregnated with a perfumed air deodorant, under Section 2(f) of the Lanham Act, 15 U.S.C.A. § 1052(f). This statute relevantly provides that, while registration shall be refused on the principal register where the mark is "merely descriptive" when applied to the applicant's goods, nothing in the statute shall prevent the registration of a mark used by the applicant "which has become distinctive of the applicant's goods." In this connection, the statute further provides:

"The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration."

The "CAR-FRESHNER" trademark is the principal asset of the plaintiff Car-Freshner Corporation. As a result of approximately fourteen years' continuous use that trademark has come to be associated by the public with the Car-Freshner Corporation as the source of all goods in the automotive accessory field bearing that name. The trademark "CAR-FRESHNER" has acquired nationwide goodwill and a well-established secondary meaning as the symbol of goods sold by Car-Freshner Corporation, the corporate plaintiff, and intended principally for ultimate sale to the motorist.

Where a trademark is merely descriptive and the evidence adduced at a plenary trial shows that it has acquired no secondary meaning, the Court will treat the trademark, though registered, as invalid. Flexitized, Inc. v. National Flexitized Corporation (2d Cir. 1964) 335 F.2d 774, 780. In the present case, plaintiffs have demonstrated with sufficient clarity for purposes of interlocutory relief that their trademark "CAR-FRESHNER" has become a recognized brand name and that thereby a secondary meaning has been established. The rebuttable presumption created by the statute, 15 U.S.C.A. § 1052(f), has been reinforced by the evidence.

While the Court does not regard "CAR-FRESHNER" as merely descriptive, any problem arising out of a merely descriptive designation is obviated by the fact that the Court finds and concludes that it has a secondary meaning.

The corporate plaintiff markets its products through the following channels of distribution: automotive accessory jobbers, automotive accessory stores and chain stores, automobile service stations, and automotive accessories departments of discount houses.

In August, 1952, plaintiff Samann adopted the device of a pine tree in connection with the sale and distribution of perfumed air deodorants under the trademark "CAR-FRESHNER". This pine tree has included at all times up to the present a block-like base and a white panel displayed at a slight angle on the body of the tree, the base has printed in green over a white background the words "For 'Forest-Fresh' Air". The white panel on the body of the tree has printed in green the words "Car-Freshner". Above these latter words is a small circular white area over which is imprinted the letter "R" in green.

The absorbent blotter stock is impregnated with the desired perfumed air deodorant. The trees are then sealed in cellophane envelopes and a number of such envelopes are stapled to a cardboard easel or display panel. Sales to retailers are of these display cards, the ultimate consumer detaching from the card the number of individual envelopes he wishes to purchase.

Defendant Turtle Wax, Inc., an Illinois corporation having its principal place of business in Chicago, is a manufacturer and distributor of products intended principally for sale to the motorist.

The corporate plaintiff and defendant are competitors. Each markets its products through the same channels of distribution: automobile accessory jobbers, gasoline stations, auto accessory stores, etc. Defendant is more than ten times the size of the corporate plaintiff. Defendant manufactures and distributes about forty different products for the automotive trade. The corporate plaintiff's main item is its air deodorant "CAR-FRESHNER".

Late in 1966 or in January 1967, defendant inaugurated a promotion campaign to market a new product, an air deodorizer in aerosol can containers, designating this product "CAR FRESHENER". It advertised its air deodorizer under the designation "CAR FRESHENER" in "Home and Auto Retailer", AAMA Show edition (January 1967 edition).

On January 31, 1967, several days after it first acquired knowledge of the use of the designation "CAR FRESHENER" by defendant, the corporate plaintiff, through its attorneys, notified defendant of its registered trademark. In this letter it stated that the use of the designation "CAR FRESHENER" infringed its trademark; it requested an immediate cessation of all use of this designation; and it requested defendant not to display or advertise its goods under this designation at the then forthcoming AAMA (Automotive Accessories Manufacturers of America) Show to be held from February 6–9, 1967 in New York City.

Defendant displayed its new air deodorizer in its booth at the AAMA Show in disregard of the corporate plaintiff's notice of infringement and of its specific request to the contrary.

Defendant advised the corporate plaintiff that it has 150,000 catalogue sheets for its new product marked "CAR FRESHENER"; that it would not agree to discontinue their use before September 1967; that it had an undisclosed supply of cans marked "CAR FRESHENER" which would not be exhausted through sales until June 1, 1967; and that it would not agree to withhold the sale of this item.

Plaintiffs claim that, if not enjoined immediately, the massive promotion—of an air deodorant marked "CAR FRESHENER"—contemplated by so large a competitor as defendant will destroy the effectiveness of the plaintiffs' "CAR-FRESHNER" trademark as the symbol which identifies the plaintiff Car-Freshner Corporation as the source of all goods in the automotive accessory field bearing this mark. The Court so finds and concludes.

In view of the long use by plaintiffs of their registered trademark "CAR-FRESHNER" and the resulting secondary meaning and goodwill which it has acquired, and the identity between plaintiff Car-Freshner Corporation's corporate name and its trademark, the Court concludes that public confusion will probably result if defendant continues to use the designation "CAR FRESHENER" in connection with the sale and promotion of its air deodorizer.

As between plaintiffs and defendant, the balance of convenience is in favor of the granting of an injunction pendente lite. Defendant is a newcomer in the air deodorant field. It had and has the duty to adopt a symbol which avoids the clear possibility of conflict with plaintiffs' mark which is already and has for so long been in use for the same class of goods. Defendant was and is obligated to refrain from trading on the goodwill of plaintiffs' trademark. The equities are in plaintiffs' favor because the damages which will be suffered by plaintiffs through the dilution or destruction of the unique quality of their trademark is vastly more serious and of much longer duration than the temporary loss which defendant will suffer by reason of an interlocutory order requiring it to desist from using the particular designation here in issue.

Defendant's refusal to refrain from further use of the designation "CAR FRESHENER" in connection with its air deodorizer until the determination of this action threatens plaintiff with irreparable damage to their trademark, and to the corporate name of the corporate plaintiff, which can only be prevented by injunction.

■ The fact that defendant's air deodorizer is sold in cylindrical aerosol spray cans while plaintiffs' product is an air deodorizer sold in dry, two-dimensional tree-shaped forms is relevant to, but not determinative of, the issues raised on this motion. The Court has carefully scrutinized and compared all of the record evidence concerning the size, shape, lettering and packaging of plaintiffs' and defendant's products. Plaintiffs do not claim that defendant is copying the packaging, color or physical make-up of plaintiffs' product. Plaintiffs claim, and in this they are correct, that—despite the differences between plaintiffs' "CAR-FRESHNER" and defendant's "CAR FRESHENER" in their respective packaging and physical form—there is a reasonable likelihood of confusion, deception and mistake on the part of purchasers as to the source of defendant's air deodorizer designated "CAR FRESHENER". As already found and concluded, a secondary meaning has developed over the past fourteen years in plaintiffs' trademark "CAR-FRESHNER" which, in the average purchaser's mind, associates that trademark with the plaintiff Car-Freshner Corporation as the source of an air deodorant bearing that trademark as well as other products.[2] The motorist of normal sophistication would probably associate defendant's air deodorizer sold under the mark "CAR FRESHENER" as an air deodorizer of plaintiffs' manufacture and as simply another packaging format of plaintiffs' air deodorizer, both products being advertised as specifically usable in connection with cars. Defendant's aerosol spray can of "CAR FRESHENER" is probably regarded by the purchaser as a new way of dispensing the same scented chemical that plaintiffs manufacture and sell in solid form as "CAR-FRESHNER". The likelihood of such confusion, deception and mistake is further enhanced by the fact that plaintiffs' and defendant's air deodorizers are distributed through the same channels of trade. Each displays its goods in the same trade shows.

To state the matter plainly, defendant's spray can of air deodorizer for cars designated "CAR FRESHENER"

---

2. The corporate plaintiff has continuously used and is using the "CAR-FRESH-NER" trademark as a brand name not only for its air deodorizers but also for its chrome cleaner and window cleaner.

is simply a device that has the probable effect of deceiving, confusing or misleading the purchaser into thinking that he is buying a product of plaintiffs' manufacture in a new form.

There can be no dispute that defendant's newcomer "CAR FRESHEN-ER" and plaintiffs' established "CAR-FRESHNER" are virtually identical, phonetically and visually. There are available a number of words which could precisely describe defendant's new product without trading upon the goodwill and distinctiveness of plaintiffs' trademark.[3] Defendant is the registrant of twenty-nine trademarks which are registered in the United States Patent Office. Defendant must be well versed in the folklore of trademark practice and could easily have made a cursory Patent Office search, if it did not have actual knowledge of plaintiffs' trademark prior to adopting the designation "CAR FRESH-ENER".

There is a reasonable probability that plaintiffs will succeed upon the plenary trial in establishing their right to an injunction restraining defendant from infringing plaintifffs' registered trademark and from competing unfairly with the corporate plaintiff as above indicated.

The only opposing affidavits are those submitted by defendant's attorneys. Although the moving affidavit of plaintiff Julius Samann refers to two meetings and conversations with Carl F. Schmid, defendant's president, on February 6 and 7, 1967, and to other material facts, there is no answering affidavit submitted by Mr. Schmid or by any other officer, director or managing agent of defendant having knowledge of the pertinent facts.

Defendant places considerable stress on Car-Freshner Corporation v. Marlenn Products Company, 183 F.Supp. 20 (D. Md.1960). But while that litigation fur-nishes some interesting historical background it did not adjudicate any of the issues now before this Court. The defendant in the District of Maryland litigation manufactured and sold "a small tree shaped figure of blotter stock material impregnated with a deodorant" that was "a Chinese copy of plaintiff's tree shaped product."

After reviewing the proceedings in the Patent Office, Judge Watkins held that, by virtue of Registration No. 595,-047, dated September 14, 1954, "the plaintiff did not obtain registration of a pine tree device to be applied to an absorbent body impregnated with a perfumed air deodorant"; that the said mark, as claimed by plaintiff in that case, and the article itself being identical could not properly be registered since the chattel itself cannot be the trademark.

Judge Watkins then found that the plaintiff had established a secondary meaning for its tree device; that the defendant had palmed off its product as the plaintiff's with fraudulent intent; that there was a probability of confusion on the part of purchasers; and that the plaintiff was entitled to injunctive relief upon the cause of action for unfair competition on the part of the defendant.

Referring to plaintiff's having obtained the registration on March 24, 1959 of the trademark "CAR-FRESH-NER" in issue in the present case, Judge Watkins said (183 F.Supp. at 29) that the application for that registration had been "granted only upon a showing by plaintiff of secondary meaning."

The controlling legal principles in this area of the law of trademark infringement and unfair competition have been so frequently expounded that they require no extensive discussion. Cases can readily be found where preliminary and permanent injunctions have been denied;[4] and many decisions have granted

---

3. Defendant should be required "in the selection of a trade-name or trade-mark" to "keep far enough away to avoid all possible confusion." Northam Warren Corporation v. Universal Cosmetic Co., 18 F.2d 774, 775 (7th Cir. 1927).

4. See, e.g., Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646 (2d Cir. 1959) (collating the decisions at p. 650, notes 1 and 2, in terms of their requiring or not requiring proof of secondary meaning); Warner Brothers Com-

preliminary and permanent injunctions.[5] In reading these opinions, each attorney will chrestomathize for himself, frequently reaching different conclusions from the same cases. The various permutations and combinations of facts involved in these decisions preclude an easy application even of accepted legal formulas. It is generally recognized that "prior decisions usually are of little value in determining likelihood of confusion between any two specific marks." Librascope, Incorporated v. Libraphone, Inc., 314 F.2d 580, 582 (C.C.P.A.1963).

The factors that are important in determining whether an alleged infringer's designation is "confusingly similar" to a plaintiff's trademark have been outlined as follows in ALI, Restatement, Torts, § 729, Factors In Confusing Similarity:

"(a) the degree of similarity between the designation and the trade-mark or trade name in

(i) appearance;

(ii) pronunciation of the words used;

(iii) verbal translation of the pictures or designs involved;

(iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers."

Judged by the pertinent authorities, the record establishes plaintiffs' right to an interlocutory injunction. Plaintiffs' motion for an interlocutory injunction is hereby granted.

This opinion contains the findings of fact and conclusions of law which constitute the grounds of the Court's action. F.R.Civ.P. 52(a), 65(d).

In accordance with F.R.Civ.P. 65(c), it is ordered that defendant, its agents, servants, employees and attorneys and all persons in active concert and participation with defendant be, and they are hereby, restrained and enjoined, pending

---

pany v. Jantzen, Inc., 249 F.2d 353, at pp. 533–534 (2d Cir. 1957) where the court said: "Numerous cases have been cited by both plaintiff and defendant giving examples of pairs of somewhat similar marks which have been the subject of litigation. Considering only the reports of the cases apart from the record, it is impossible to harmonize the decisions."; Best & Co. v. Miller, 167 F.2d 374 (2d Cir. 1948) (complaint dismissed after trial); Sunrise Home Juices, Inc. v. Coca-Cola Company, 220 F.Supp. 558 (S.D.N.Y.1963); Morris Struhl, Inc. v. Relaxor Cushion Corporation, 161 F. Supp. 826 (S.D.N.Y.1958); Model-Etts Corp. v. Merck & Co., Inc., 118 F.Supp. 259 (S.D.N.Y.1953).

5. See, e.g., Maternally Yours v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956); Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144 (3d Cir.), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed 377 (1953); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602 (2d Cir. 1952), cert. denied, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953); La Touraine Coffee Co. v. Lorraine Coffee Co., 157 F.2d 115 (2d Cir.) where the court reversed dismissal of the complaint after trial

stating at p. 117: "In this area of trademark law, each case must be considered separately and precedents are not conclusive. But examination of the cases gives some standard of similarity; * * *", cert. denied, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946); Standard Brands v. Smidler, 151 F.2d 34 (2d Cir. 1945) (permanent injunction after trial); Travel Magazine, Inc. v. Travel Digest, Inc., 191 F.Supp. 830 (S.D.N.Y.1961) (defendant's motion for summary judgment denied); Javar Coffee Co. v. Jos. Martinson & Co., 142 F.Supp. 423 (S.D.N.Y. 1956) where the Court observed at 425: "Each case involving trade-mark infringement must be decided on the facts of that case; a case on all fours is impossible and nothing less is controlling"; Ambassador East, Inc. v. Shelton Corners, Inc., 120 F.Supp. 551 (S.D.N.Y. 1954); Grove Laboratories, Inc. v. Approved Pharmaceutical Corporation, 149 F.Supp. 86 (N.D.N.Y.1957) (injunction granted after trial); Mandee Fabrics, Inc. v. Slifka, 97 F.Supp. 187 (S.D.N.Y. 1951); Gamlen Chemical Co. v. Gamlen, 79 F.Supp. 622 (W.D.Pa.1948); Colonial Radio Corporation v. Colonial Television Corp., 78 F.Supp. 546 (S.D.N.Y.1948).

the determination of this action, from manufacturing, distributing, advertising, selling, or offering for sale air deodorizers under the designation "CAR FRESHENER"; provided that plaintiffs first give security in the sum of $15,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined, such bond to be approved by the Court.